# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-01404-SCT

*WILBERT TURNER GILLEY, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/1997 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | FELICIA DUNN-COOPER BURKES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/30/1999 |
| MOTION FOR REHEARING FILED: | ; denied 4/6/2000 |
| MANDATE ISSUED: | 10/21/99 |

## BEFORE SULLIVAN, P.J., BANKS AND WALLER, JJ.

## WALLER, JUSTICE, FOR THE COURT:

¶1. Wilbert Turner Gilley, Jr. was convicted of selling cocaine in violation of Miss. Code Ann. § 41-29-139 (1993 & Supp. 1999) and was sentenced as a recidivist under Miss. Code Ann. § 99-19-81 (1994), to imprisonment for 30 years. Gilley appeals to this Court raising six issues:

> **I. Whether the lower Court committed reversible error in allowing into evidence Exhibit S-1 over the objection of defense counsel?**

> **II. Whether the lower Court committed reversible error in allowing into evidence Exhibit S-2 over the objection of defense counsel?**

> **III. Whether the lower Court committed reversible error by unconstitutionally chilling the Defendant's right to freely and voluntarily exercise his Fifth Amendment right to testify?**

> **IV. Whether the lower Court committed reversible error in refusing Motion for Directed verdict made at the close of the state's case and renewed at the conclusion of trial?**

**V. Whether the lower Court committed reversible error in overruling Defendant's timely objection to the State's reference to "Marked Money" during closing argument and refusing to grant Defendant a mistrial, after the Appellant filed a Motion in Limine to prohibit the State from introducing, arguing, or stating that the "Marked Money" was in the possession of the Defendant, had a hearing outside the presence of the jury wherein said Motion was sustained, and the State during the rebuttal phase of closing argument violated the Court's order and linked the Defendant to the "Marked Money"?**

**VI. Whether the Defendant's trial counsel was ineffective?**

## STATEMENT OF THE FACTS

¶2. At a pre-buy meeting, Reserve Officer Johnny Wallace was outfitted with a body wire and given City of Gulfport funds with which to attempt to purchase illegal drugs. After the meeting, Wallace rode around in an unmarked car in a neighborhood where drug activity had been reported. He pulled up to an intersection where 6 or 7 people had congregated and asked if anyone could sell him some "hut," a street term for crack cocaine. A man later identified as Gilley approached the vehicle, removed an off-white rock-like substance from his mouth (later determined to be crack cocaine), and traded it for $20. Wallace gave the "password" for back-up officers to move in and make the arrest, but received no response. To keep the suspect from getting away, he asked the suspect to sell him another "piece of hut," and paid another $20 for a second rock of crack cocaine. Officer Wallace again gave the "password" and this time the arrest team came, though not in time to catch Gilley before he walked into a nearby apartment building. When Gilley left the apartment building 4 or 5 minutes later, he was apprehended and arrested. No money was found on Gilley at the time of arrest.

¶3. Officer Loposser, a member of the back-up team, testified that he photocopied $40 in cash and then gave the money, obtained from the City of Gulfport, to Wallace. The photocopy, admitted as S-1, was kept in his case file until the time of trial. Loposser further testified that Wallace positively identified Gilley at the time of arrest. Loposser also identified the crack cocaine admitted into evidence as Exhibit S-2, which he collected from Wallace at the crime scene, and which was later confirmed as crack cocaine by the State Crime Laboratory.

¶4. Outside the presence of the jury, the judge inquired about whether Gilley had been apprised of his constitutional right not to testify, to which question both Gilley and defense counsel responded affirmatively. The defense rested without calling any witnesses.

## STATEMENT OF THE LAW

**I. Whether the lower Court committed reversible error in allowing into evidence Exhibit S-1 (a photocopy of the money given to Officer Wallace) over the objection of defense counsel?**

**V. Whether the lower Court committed reversible error in overruling Defendant's timely objection to the State's reference to "Marked Money" during closing argument and refusing to grant Defendant a mistrial, after the Appellant filed a Motion in Limine to prohibit the State from introducing, arguing, or stating that the "Marked Money" was in the possession of the Defendant, had a hearing outside the presence of the jury wherein said Motion was sustained, and the State during the rebuttal phase of closing argument violated**

**the Court's order and linked the Defendant to the "Marked Money"?**

¶5. This Court has held that "'[a] trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling.'" *Turner v. State*, 732 So. 2d 937, 946 (Miss. 1999) (*quoting Fisher v. State*, 690 So. 2d 268, 274 (Miss.1996)). Similarly, the decision that an error is irreversible and a mistrial should be granted is within the discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *Snelson v. State*, 704 So. 2d 452, 456 (Miss. 1997).

¶6. Gilley argues that Exhibit S-1, the photocopy of the $40 in cash, should not have been admitted into evidence because there is nothing that connects him to the money, inasmuch as it was not found on him when he was arrested. He concludes that Exhibit S-1, therefore, has no probative value and was misleading to the jury and prejudicial because it inferred that he was somehow connected to the "marked money." Gilley also assigns as error a comment referring to the "marked money" made by the prosecutor in his closing argument in rebuttal: "I tell you, the one mistake that stands out in my mind that occurred that night, the one big mistake that Mr. John Doe, who we find out is Wilbert Gilley, John Doe traded this cocaine to the police for marked money."

¶7. Before trial, the court granted Gilley's motion in limine and ordered the State not to attempt to introduce evidence that the "marked money" was found on Gilley when he was arrested. At trial, both Wallace and Loposser testified about the buy/bust operation, the pre-buy meeting, and that Wallace was given funds with which to purchase drugs. The photocopy of the $40 in cash was entered into evidence as Exhibit S-1. Wallace testified that he transacted two deals with Gilley, each for $20.

¶8. Exhibit S-1 was only relevant to set out the procedure of the buy/bust operation and to corroborate to some extent the testimony of the officers concerning the amount of money used to make the buys. It would have, of course, been more relevant if the money had actually been found on Gilley. The question, then, is whether the evidence was more prejudicial than probative. M.R.E. 401 & 403. Given the testimony at trial, the jury could easily conclude that $40 in cash was involved in the buy/bust operation, of which Gilley was the target, even without a photocopy of the money. Also, Loposser truthfully admitted that the money was not on Gilley's person when he was taken into custody, a point which defense counsel more than adequately emphasized in closing argument. It therefore cannot be concluded that the photocopy prejudiced Gilley, and the trial court did not abuse its discretion in allowing Exhibit S-1 into evidence. *See Turner*, 732 So. 2d at 946.

¶9. Neither was Gilley unduly prejudiced by the prosecutor's statement in rebuttal closing argument that Gilley had traded drugs for "marked money." While there is a fair inference from the statement that the "marked money" could be linked to Gilley, it was clear from the testimony that no money was found on Gilley, nor was that argued at trial. The trial judge was well within his discretion in denying a mistrial. We also note that Gilley failed to ask for a limiting instruction on the prosecutor's remark or request sur-rebuttal, which would certainly have been a more appropriate remedy than a mistrial.

### II. Whether the lower Court committed reversible error in allowing into evidence Exhibit S-2 over the objection of defense counsel?

¶10. Again, a trial judge has great discretion concerning the admissibility of evidence, and that discretion will not be overturned absent a showing of prejudice to the defendant. *Turner*, 732 So. 2d at 946. Gilley

argues that there was an incomplete chain of custody for Exhibit S-2 (two rocks of crack cocaine which Wallace allegedly bought from Gilley), as there was no testimony from the officer who transported the cocaine from the Mississippi Bureau of Narcotics to the State Crime Laboratory, or the person who accepted the cocaine at the Crime Lab.

¶11. We have held that "the test for the continuous possession of evidence is 'whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence.'" *Doby v. State*, 532 So. 2d 584, 588 (Miss. 1988) (*quoting Gibson v. State*, 503 So. 2d 230, 234 (Miss. 1987)). *Accord*, *Wilson v. State*, 574 So. 2d 1324, 1335 (Miss. 1990). "[T]he burden to produce evidence of a broken chain of custody (i.e., tampering) is on the defendant." *Hemphill v. State*, 566 So. 2d 207, 208 (Miss. 1990). The determination of whether a proper chain of custody has been established is within the discretion of the trial court. *White v. State*, No. 97-KA-01239-SCT, 1999 WL 418805, *6 (Miss. June 24, 1999) (*citing Nalls v. State*, 651 So. 2d 1074, 1077 (Miss. 1995); *Wells v. State*, 604 So. 2d 271, 277 (Miss. 1992).

¶12. Gilley made no inference, either at trial or on appeal, that the evidence had been tampered with. The State should not be expected to call witnesses who would take up the valuable time of the jury and court to testify about the transportation and receipt of evidence when no negative allegations concerning the handling of the evidence have been raised. The exhibit bore the tags and initials of the officer who had received the evidence and of the technician who had tested it, both of whom verified their initials in testimony and identified the contraband. Their testimony also revealed that proper procedures and safeguards were followed in transporting and receiving the evidence, and that testimony was subject to cross-examination. The trial judge was soundly within his discretion in admitting Exhibit S-2. This issue is without merit.

### III. Whether the lower Court committed reversible error by unconstitutionally chilling the Defendant's right to freely and voluntarily exercise his Fifth Amendment right to testify?

¶13. At trial, the following dialogue took place outside the presence of the jury:

COURT: Before we break and go off the record, Mr. Negrotto [defense counsel], have you discussed with your client that he has a constitutional right not to testify?

NEGROTTO: Yes, sir; I have.

COURT: Mr. Gilley, do you understand whether you testify is not your attorney's decision; it's not my decision. It's your decision; do you understand that?

GILLEY: Yes, sir.

COURT: And do you understand that if you choose not to testify, the Court will read to the jury an instruction submitted by your attorney, which basically states that you have that constitutional right; and that if you choose to exercise that right, the jury can make no negative inference from your failure to testify? Do you understand that?

GILLEY: Yes, sir.

COURT: I believe that instruction goes on to say that they can't even discuss the fact that you didn't testify; do you understand that?

GILLEY: Yes, sir.

COURT: **Do you understand that if you take the stand and you waive your constitutional right to testify, and if your attorney asks you one question: "Did you sell this cocaine?" then at that time, the D.A. can ask you questions from now until the sun goes up and down two or three times?** Do you understand?

GILLEY: Yes, sir.

COURT: Mr. Negrotto, do you believe that your client has understood your explaining his constitutional right to him not to testify?

NEGROTTO: That's correct. I believe he understands that, yes, sir.

(Emphasis added).

¶14. Gilley claims that the above highlighted statement by the trial judge "infringed upon and chilled his exclusive right to determine whether or not to take the witness stand in his own defense by threatening to permit the prosecutor to subject Defendant to unfettered and boundless cross-examination should Defendant elect to testify on his own behalf."

¶15. In the case of *Culberson v. State*, 412 So. 2d 1184 (Miss. 1982), this Court held that Article 3, Section 26 of the Mississippi Constitution gives a criminal defendant the constitutional right to testify on his own behalf, *id.* at 1186, and that the defendant should be advised on the record outside the presence of the jury of this right to testify, so that no question regarding waiver should ever arise. *Id.* at 1186-87; *see also* Miss. Const. of 1890, art. 3, § 26. Trial judges must walk a fine line because they must advise a criminal defendant that he has the right *to testify* under the Mississippi Constitution *and* the right *not to testify* under the Fifth Amendment of the United States Constitution.

¶16. In the case *sub judice*, the trial judge informed Gilley that (1) he had a right not to testify, (2) the jury would be instructed that they could draw no negative inference from his refusal to take the stand, (3) he had a right to testify, and (4) the decision of whether or not he testified would be his decision alone. This discourse took place on the record outside the presence of the jury. *Culberson* requires no more.

¶17. However, the trial judge went a step further and told Gilley that if he did testify, he would be subject to cross-examination. Although the judge was very emphatic in making this statement and implied that Gilley might suffer negative consequences if he did testify, there is no indication that the judge intended to persuade Gilley one way or another. In fact, when the judge inquired as to whether Gilley had been advised of his right to testify, the State had not rested. Defense counsel responded that Gilley's decision would be determined by what further evidence the State introduced. Because it was clear that Gilley had not yet decided whether to take the stand, the judge advised Gilley to consult with his attorney privately to make sure that he understood his rights. After the State rested, the court again asked defense counsel if he had further discussed with his client whether or not he would testify. Defense counsel responded that he had done so and that Gilley would not testify. The record shows that Gilley was well advised of his rights and made an informed choice. We find this assignment of error to be without merit.

**IV. Whether the lower Court committed reversible error in refusing Motion for Directed Verdict made at the close of the state's case and renewed at the conclusion of trial?**

¶18. Gilley states that he should have been granted a directed verdict because the State failed to establish that the alleged offense took place on July 9, 1996, as set forth in the indictment. He argues that if the State alleges that the crime occurred on a certain date, but fails to prove that the crime occurred on that date, then it has not met its burden of proof. ¶19. On direct examination of its first witness, Wallace, the State directed the officer's attention to *June* 9th, 1996, and the officer responded that he was involved in a buy/bust operation on *June* 9th, 1996. In actuality, the crime occurred on *July* 9th, 1996, as alleged in the indictment. The correct date was given in every other instance at trial, a total of four times. We find that this inconsistency was a harmless mistake. The trial judge did not err by denying the motion for a directed verdict.

## VI. Whether the Defendant's trial counsel was ineffective?

¶20. Ineffective assistance of counsel is analyzed under the two-prong test of **_Strickland v. Washington_, 466 U.S. 668, 687 (1984):** a defendant must show (1) specific acts or omissions on the part of trial counsel indicating deficient performance, and (2) the deficient performance resulted in prejudice to the defendant. There is a strong presumption that the performance of counsel was adequate, and a reviewing court may look to the totality of the circumstances in determining whether a defendant was deprived of effective assistance of counsel. ***Waldrop v. State***, 506 So. 2d 273, 276 (Miss. 1987). "To overcome this presumption, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **_Payton v. State_, 708 So. 2d 559, 560-61 (Miss. 1998)** (*quoting* **_Strickland_, 466 U.S. at 694**).

¶21. In the instant case, Gilley alleges several acts or omissions on the part of counsel:

> 1. *Failure to file a motion to suppress in-court identification and failure to submit a jury instruction on identification testimony.*

¶22. Defense counsel's apparent trial strategy was to dispute Wallace's in-court identification of Gilley. Although counsel did not file a motion to suppress the in-court identification, he objected to Wallace's testimony so strongly that the identification was attempted several times before the judge would admit it. Likewise, counsel made a persuasive closing argument based on misidentification. Jury instructions concerning the weight and credibility of witness testimony were submitted, and the jury was instructed that they had to be positive about the in-court identification and find the testimony believable.

¶23. Even assuming, *arguendo*, counsel's performance was deficient, Gilley cannot show that he was prejudiced thereby. The jury heard very credible testimony that Wallace positively identified Gilley *at the time of arrest*, not just at trial, that Wallace had adequate time to observe Gilley during the sell, and that he identified Gilley not more than five minutes after the sell was completed. Further, a jury instruction on identification may have been more detrimental to Gilley than helpful, as it may have reinforced Wallace's testimony in the minds of the jury.

> 2. *Admitting in opening statement that Defendant was present at the scene of the crime.*

¶**24.** Defense counsel made the following remark in opening statement: "This man was out of their [the police officers'] sight for a while. We're not denying he was there. What we are denying is that he sold any drugs . . . ."

¶25. This Court has held that it is within the trial strategy of defense counsel what may be admitted at the time of trial. *See, e.g., Evans v. State, 725 So. 2d 613 (Miss. 1998)* (defense counsel admitted to defendant's guilt and argued for mitigation on sentencing); *Holland v. State*, 656 So. 2d 1192 (Miss. 1995) (defense counsel admitted defendant had committed a lesser included offense). Regardless of trial counsel's strategy, his admission that Gilley was present at the scene of the crime can only be harmless. Wallace and Loposser testified that Gilley was arrested at the scene of the crime. Obviously, he was present. Defense counsel's statement could not have caused prejudice to Gilley.

*3. Failure to file discovery motions or conduct any investigation into the facts of the alleged charge such as visiting the crime scene or attempting to secure statements from known witnesses.*

¶26. This Court has stated that "'at a minimum, counsel has a duty to interview potential witnesses and to make independent investigation of the facts and circumstances of the case.'" *Ferguson v. State*, 507 So. 2d 94, 95 (Miss. 1987) (*quoting Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir.1985)). However, the *Ferguson* Court did not find that failure to do so constituted ineffective assistance, as the defendant could not meet the second prong of *Strickland* by showing that the outcome of the trial would have been different but for counsel's deficient performance.

¶27. This case is similar. Gilley cannot show that additional discovery or investigation would have changed the outcome of the case. First, Gilley fails to allege what could have been revealed by additional discovery. Second, Gilley does not allege that the testimony of others present at the scene of the crime could have aided his case. Without a showing of prejudice by Gilley, he does not meet the *Strickland* standard of ineffective assistance of counsel.

## CONCLUSION

¶28. Gilley's assignments of error are without merit and do not warrant reversal in this case. The trial court did not abuse its discretion in admitting the disputed exhibits and did not err in denying Gilley's motion for directed verdict. The trial judge did not "chill" Gilley's right to testify on his own behalf or commit reversible error in refusing to grant a mistrial. Gilley has not shown that his trial counsel was ineffective or that he was prejudiced by his counsel's performance at trial. We affirm Gilley's conviction and sentence, and the judgment of the Harrison County Circuit Court.

**¶29. CONVICTION OF UNLAWFUL SALE AND/OR TRANSFER OF COCAINE IN VIOLATION OF MISS. CODE ANN. SECTION 41-29-139 (1993 & SUPP. 1999) AND SENTENCE OF 30 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A RECIDIVIST UNDER MISS. CODE ANN. SECTION 99-19-81 (1994), AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND COBB, JJ., CONCUR.**