749 So.2d 369 (1999)
Carl Ray JOHNSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01086-COA.
Court of Appeals of Mississippi.
October 12, 1999.
*370 Thomas L. Kesler, Columbus, Attorney for Appellant.
Office of the Attorney General by Jolene M. Lowry, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., DIAZ, AND MOORE, JJ.
MOORE, J., for the Court:
¶ 1. Appellant Carl Ray Johnson was indicted by a Simpson County grand jury on one count of attempted aggravated assault, one count of aggravated assault, one count of murder, and one count of capital murder. Johnson was prosecuted in the Circuit Court of Lowndes County after a change of venue from the Circuit Court of Simpson County. Following a trial, the jury found Johnson guilty of aggravated assault of Mary Walker, manslaughter of *371 R.V. Lewis, and capital murder of Simpson County Sheriff Lloyd Jones. The circuit court sentenced Johnson to fifteen years for aggravated assault, twenty years for manslaughter and life without parole for capital murder, all sentences to run consecutively, in the custody and control of the Mississippi Department of Corrections. Johnson appeals the manslaughter and capital murder convictions, citing a single issue on appeal:

WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S PROPOSED SELF-DEFENSE INSTRUCTION, D-5.
Finding no error, we affirm.

STATEMENT OF THE FACTS
¶ 2. In late September or early October 1995, Carl Ray Johnson loaned money to his friend Mary Walker to pay her pastdue furniture bill. Walker did not use the loan money to pay her bill; instead, she gambled with some of the money and loaned some of the money to her sister's stepson Marrell Smith. Johnson was upset with Walker for not applying the borrowed money to her furniture bill.
¶ 3. At about 11:00 p.m. on October 3, 1995, Johnson picked Walker up from her home and drove her to his friend's house where they spent the night. At about 6:00 a.m. on the following morning, Johnson proceeded to drive Walker back to her house. On the way to Walker's home, Johnson and Walker encountered Smith who was driving his car on the same road. Johnson flashed his truck lights to capture Smith's attention. Both Johnson and Smith stopped and exited their vehicles. After exchanging words with Smith, Johnson became angry and retrieved a pistol from his truck. He shot at Smith who then ran away.
¶ 4. Alerted by the shots, Walker stepped out of Johnson's truck and asked him why he shot at Smith. Johnson turned toward Walker and shot her in the groin area. Johnson then told Walker to shut up or he would shoot her mother. Walker ran toward Johnson and he "slung" her on the ground and shot her again. Melinda Green ran from her home, which was in close proximity to the melee, to see what happened. Upon seeing a bleeding Walker on the ground, Green shouted that she would call Sheriff Lloyd Jones. According to Walker, Johnson said, "I'll shoot that big m____f____ too." Green ran back to her house, and Johnson drove away.
¶ 5. At about 7:00 a.m. that same morning, October 4, 1995, Harold Brown, a deputy jailer, and Jerry Lee Sims, a trustee prisoner, drove to Sheriff Jones's residence. They saw R.V. Lewis, a long-time trustee prisoner, lying dead on the ground with a shotgun near his body. They also saw Sheriff Jones slumped over in the front seat of his Suburban. Sheriff Jones, who had been mortally wounded, later died at the scene. No weapons were found on Sheriff Jones. Joe Edward Andrews, Jr., an expert in the field of micro-analysis employed by the Mississippi Crime Laboratory, testified that Jones had gunshot residue on his hands. Trustee Lewis did not have gunshot residue on his hands.
¶ 6. Johnson testified on his own behalf. He claimed that Smith had repaid some of the money to Walker. When Johnson stopped Smith on the road, he asked Smith how much of the money had he repaid to Walker. Johnson stated that he was angry because either Smith or Walker had lied to him about the amount of money Smith paid Walker. Johnson admitted he shot Walker twice. Johnson testified that prior to shooting Walker, he heard a voice in his head that told him not to let Walker get away. After he shot her, Johnson left Walker bleeding and lying in the road.
¶ 7. Johnson testified that he drove to Sheriff Jones's residence to turn himself in for shooting Walker. He claimed he saw a man he later learned was a trustee, Lewis, with a shotgun in his hand. The sheriff was in the front seat of his Suburban. Johnson stated that he told the sheriff he *372 had just shot Walker, to which the sheriff responded: "Well you ain't shot nobody. She ain't nobody." Johnson then mentioned that Walker had accused the sheriff of having molested and killed a prisoner named Andre Jones a few years before. Johnson testified that the sheriff, who had begun uttering racial epithets at him, ordered Lewis to shoot him. According to Johnson, Lewis looked at Sheriff Jones and Jones again told Lewis to shoot Johnson. As Lewis fumbled with the shotgun, Johnson retrieved a shotgun from his truck. Johnson claimed that Lewis leveled his shotgun at him so he shot Lewis because "he was getting ready to shoot me."
¶ 8. Johnson testified that he approached Sheriff Jones and asked "[C]an we get someone out here?" Johnson claimed the sheriff told him, "[Y]ou're a dead n____." Johnson was looking toward the ground when he heard a shot; he then drew up and shot Sheriff Jones twice. Witnesses saw Johnson's truck leaving the scene of the homicides. He was later apprehended at a roadblock and taken into custody.

ANALYSIS
¶ 9. Appellant Johnson assigns and argues only one issue on appeal:

DID THE TRIAL COURT ERR IN REFUSING TO GRANT INSTRUCTION D-5?
¶ 10. If warranted by the evidence, it is fundamental that a defendant is entitled to a jury instruction on his theory of the defense. Slater v. State, 731 So.2d ¶ 15 (¶ 12) (Miss.1999). This Court examines the jury instructions as a whole in deciding whether the trial court committed reversible error in refusing to grant a jury instruction. Coleman v. State, 697 So.2d 777, 782 (Miss.1997). "[T]he instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Hickombottom v. State, 409 So.2d 1337, 1339 (Miss.1982); see Ragin v. State, 724 So.2d 901 (¶ 28) (Miss.1998).
¶ 11. Johnson alleges that even though the trial court granted other self-defense instructions, none of the instructions directed the jury to consider the circumstances existing at the time of the homicides from his viewpoint. Johnson argues that the trial court should have given his proposed instruction, D-5, as follows:
INSTRUCTION D-5
The Court instructs the Jury that you are not to judge the actions of Carl Ray Johnson in the cool, calm light of after-developed facts, but instead you are to judge the his [sic] actions in the light of the circumstances confronting Carl Ray Johnson at the time, as you believe from the evidence that those circumstances reasonably appeared to him on that occasion; and if you believe that under those circumstances it reasonably appeared to Carl Ray Johnson that he then and there had reasonable ground to apprehend some great personal injury from R.V. Lewis and Lloyd Jones, and there reasonably appeared to Carl Ray Johnson to be imminent danger of such designs being accomplished; then he was justified in anticipating an attack and using reasonable means to defend such attack, then you must find Carl Ray Johnson not guilty of the murders of R.V. Lewis and Lloyd Jones.
¶ 12. The trial judge refused D-5 but gave three self-defense instructions, one proposed by the State and two proposed by the defendant. The trial court gave S-9, an instruction requested by the State, as follows:
INSTRUCTION S-9
The Court instructs the jury that to make a killing or assault justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend *373 a design on the part of the victim to kill him or do him some great bodily harm, and in addition to this, he must have reasonable ground to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.
¶ 13. S-9 is the exact instruction the Mississippi Supreme Court suggested that prosecutors should use when self-defense is an issue at trial. Robinson v. State, 434 So.2d 206, 207 (Miss.1983). Robinson was overruled by Flowers v. State, 473 So.2d 164, 165 (Miss.1985), to the extent that it "merely criticized instead of condemned the instruction which it replaced." Gossett v. State, 660 So.2d 1285, 1295 (Miss.1995). Until recently, the Mississippi Supreme Court held that the instruction suggested by the Robinson court was a correct statement of the law of self-defense and accurately guided the jury on the law of self-defense. Gossett, 660 So.2d at 1295. When the trial court gives a Robinson instruction, the trial court does not err when it does not instruct the jury to examine the circumstances at the time of the incident from the defendant's viewpoint. Id. In Cohen v. State, 732 So.2d 867 (Miss.1998), the court again approved the Robinson instruction as a complete and correct statement of self-defense law.
¶ 14. One month after Cohen, the court ruled that the Robinson instruction does "not sufficiently treat the subject of self defense...." Reddix v. State, 731 So.2d 591 (¶ 21) (Miss.1999). In Reddix, the defendant argued on appeal that the Robinson instruction was "incomplete in that it failed to instruct the jury that it was bound to acquit Reddix ... if it believed Reddix acted in self defense." Id. at (¶ 18). The court agreed, stating:
This instruction, while fine for the State, is not sufficient as a neutral self defense instruction. It is couched in prosecutorial terms and fails to state that self defense is, in fact, a defense. In other words, the instruction failed to notify the jury it was bound to acquit Reddix if it found that he acted in self defense. Assuming, as we do that juries follow the instructions given to them by the trial court (citation omitted) this means the jury could not have acquitted Reddix based upon self defense because it was not informed of any law permitting them to do so.
Id. at (¶ 20).
¶ 15. The problem that Reddix properly highlights is that the long-approved Robinson instruction cannot be the sole reference to self-defense. It is quite simply a definition. What the jury is to do with that definition must be provided with additional language. The most common way is in the instruction, usually offered by the State, that explains the elements of the offense. In Cohen, the last case that upheld the Robinson instruction prior to Reddix, that is exactly where the language was located. Cohen, 732 So.2d at 872. In that aggravated assault case, the jurors were told that they were to decide whether the proof supported beyond a reasonable doubt that the various elements of the crime had been committed, including that Cohen was not acting in necessary self-defense. Id. With that explanation given the jury, followed by the Robinson-approved meaning of "self-defense," the jury had what it needed. In Reddix, the elements instruction was fatally defective for other reasons, but it also did not include anything about the aggravated assault not being in necessary self-defense. Reddix, 731 So.2d at 592. Had that instruction contained the usual reference to the acts not being in necessary self-defense, that would have provided the structure within which the definition could operate.
¶ 16. We look to see if any instruction in the present case provides what was missing in Reddix. The elements instruction makes no reference to self-defense. However, Johnson requested and received two instructions addressing self-defense:

*374 INSTRUCTION D-6

The Court instructs the Jury that Carl Ray Johnson was not under an obligation to wait for serious bodily harm upon [sic] from R.V. Lewis and Lloyd Jones before Carl Ray Johnson took action to defend himself from an attack. If you find from the evidence that Carl Ray Johnson took action to defend himself without knowing for certain that either R.V. Lewis or Lloyd Jones was about to cause him serious bodily harm, and further that it was reasonably apparent to a reasonable person of average prudence that Carl Ray Johnson was in danger of serious bodily harm, then you must find Carl Ray Johnson not guilty of the murders of R.V. Lewis and Lloyd Jones. It is for the jury to determine the reasonableness of the ground upon which the defendant acted.
(Emphasis added).
INSTRUCTION D-9
The Court further instructs the Jury that if you find from the evidence in this case that on or about October 4, 1995, that Carl Ray Johnson did shoot and kill R.V. Lewis and Lloyd Jones; but that such shooting was in necessary self defense, as defined by other instructions of the Court; then your duty under the law is to find the Defendant, Carl Ray Johnson, not guilty of the murders of R.V. Lewis and Lloyd Jones.

(Emphasis added).
¶ 17. In Reddix, what was found missing in the Robinson instruction was that the jury was not notified that it was "bound to acquit Reddix if it found that he acted in self defense." Reddix, 731 So.2d at 595. Instructions D-6 and D-9 requested by the defendant say exactly that.
¶ 18. When one jury instruction adequately covers the defendant's theory of self-defense, the trial court may properly refuse to grant a second instruction that is redundant or cumulative. Gossett v. State, 660 So.2d 1285, 1295 (Miss.1995). Because of instructions D-6 and D-9, there was no error in failing to give D-5, which added yet another but unnecessary perspective on the defense.
¶ 19. We do not suggest that the State's burden has been lessened or shifted. It remains the burden of the State to prove beyond a reasonable doubt that the defendant was not acting in self-defense. Heidel v. State, 587 So.2d 835, 843 (Miss. 1991).
¶ 20. When self-defense becomes an issue, the State's instruction setting forth the elements of the crime should specifically place the burden of proof upon the State. See, e.g., MISS. MODEL JURY INSTRUCTIONS, § 114.01 (2nd ed.1998) (elements of homicide instruction includes notation that the State must prove the defendant "was not acting in self-defense"). Thus, when the State's elements instruction is paired with the Robinson-approved definition of self-defense, a jury would be sufficiently instructed as to the defendant's right of self-defense and the State's burden in disproving self-defense beyond a reasonable doubt.
¶ 21. In the present case, this Court must examine whether the trial court properly informed the jury of the State's burden in disproving self-defense in light of the lack of reference to self-defense in the State's elements instruction. In making this inquiry, we note that the instructions are to be read as a whole and omissions from one, so long as not creating inconsistent instructions, can be corrected by language in others. Nicholson v. State, 672 So.2d 744, 752 (Miss.1996). The trial court in the present case properly informed the jury to consider the instructions as a whole as follows:
INSTRUCTION S-2
The Court instructs the jury that all instructions must be read and considered together as the instruction of the Court and that before you may reach a verdict in this case all twelve of you must agree on that verdict.
*375 ¶ 22. Here, the trial court granted instruction D-2 which provided that if there arose "a reasonable doubt of the existence of a single material fact upon which the guilt of the Defendant depends, then it is the law" that the defendant be given the benefit of the doubt and acquitted. That may be imperfect, but on balance it provided the guidance necessary that if there was any reasonable doubt about a determination that the jury was to make, Johnson was to be found not guilty.

CONCLUSION
¶ 23. The specific issue that we were called to upon to address was whether the refusal of instruction D-5 was error. It was not. Neither does the post-Reddix state of the law as to the appropriate language for a self-defense instruction suggest that reversible error occurred here. Accordingly, we affirm.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY ON CHANGE OF VENUE FROM SIMPSON COUNTY OF CONVICTION OF COUNT II OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS; COUNT III OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS, TO RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT II; COUNT IV OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT POSSIBILITY OF PAROLE, TO RUN CONSECUTIVELY TO SENTENCE IN COUNT III, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SIMPSON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.