# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01137-COA

**THOMAS BAKER A/K/A THOMAS EARL BAKER A/K/A MUSCLE MAN**  
  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  
  **APPELLEE**

DATE OF JUDGMENT:  06/20/2019  
TRIAL JUDGE:  HON. LINDA F. COLEMAN  
COURT FROM WHICH APPEALED:  TUNICA COUNTY CIRCUIT COURT  
ATTORNEY FOR APPELLANT:  OFFICE OF STATE PUBLIC DEFENDER  
  BY: HUNTER NOLAN AIKENS  
ATTORNEY FOR APPELLEE:  OFFICE OF THE ATTORNEY GENERAL  
  BY:  META S. COPELAND  
DISTRICT ATTORNEY:  BRENDA FAY MITCHELL  
NATURE OF THE CASE:  CRIMINAL - FELONY  
DISPOSITION:  AFFIRMED - 04/20/2021  
MOTION FOR REHEARING FILED:  
MANDATE ISSUED:

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. Thomas Baker was convicted of aggravated assault and sentenced to seven years in the custody of the Mississippi Department of Corrections, with five years to serve and two years suspended and two years' probation. At trial, Baker claimed he acted in self-defense. The jury was given two self-defense instructions. On appeal, Baker argues the trial court committed reversible error in failing to adequately instruct the jury on the State's burden to prove beyond a reasonable doubt that Baker did not act in self-defense. In addition, Baker argues that his counsel was ineffective for failing to request such an instruction. Finding no

reversible error, we affirm Baker's conviction and sentence.

**FACTS**

¶2.     On August 20, 2017, around 4:45 a.m., Baker and Demetria Anderson had a violent altercation outside of Baker's apartment.  Baker called 911 immediately after.  When law enforcement arrived, they found a knife and a broken pool stick on the ground in front of the apartment.  Baker told law enforcement that he had grabbed a pool stick to defend himself from Anderson.  Baker did not appear to be injured or have any defensive wounds.

¶3.     Anderson left the scene before law enforcement arrived, but they were able to locate her behind a nearby apartment.  She was favoring her stomach but had no visible bleeding. Anderson was later airlifted to a hospital in Memphis, Tennessee, and treated for three stab wounds—one in her stomach and two in her back.  She underwent surgery and stayed in the hospital for almost a week.  While Anderson was hospitalized, an investigator went to the hospital and attempted to get Anderson's statement.  However, Anderson was too sedated to provide a statement at that time.

¶4.     Baker was arrested the night of the incident.  Curiously, the record shows no known connection between Baker and Anderson before the night of the incident.  The next day, the police obtained a *Miranda*[1] waiver from Baker and recorded his statement.  Baker told the police that he was asleep in his apartment when he heard scratching on the door.  He got up and saw Anderson outside his door.  Baker told Anderson to leave and flickered the lights to scare her away, but that did not work.  When he opened the door, Anderson swung at him

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

with a knife. He grabbed a pool stick, hit her with it, got her to the ground, and took her knife. Baker stated that he stuck Anderson with the knife a couple of times in her shoulder area before she ran away. Baker told the police that Anderson had "a deadly weapon" and that he made "a split-second decision" to defend himself.

¶5.    Baker was later indicted for aggravated assault, and his trial was held on June 17, 2019. Anderson and Baker both testified at trial. According to Anderson, that night she went to her sister's apartment, which was next door to Baker's apartment. She knocked on the door, and no one answered. As Anderson turned to leave, she felt three to four strikes to her back and heard a male voice saying, "Die Bitch, Die Bitch." Anderson stated that she carried a knife for protection and tried to use it on Baker, but he disarmed her and stabbed her three times.

¶6.    Baker's trial testimony differed from his recorded statement. He testified that he exited the apartment to start his day when he saw Anderson outside his door with a knife. He also stated that Anderson appeared to be on drugs and that she was "infuriated and aggravated." Baker claimed Anderson started the fight by holding her knife to his eye and trying to force her way into his apartment. Baker testified that he was "fearful for [his] life" when he hit Anderson with the pool stick. He also testified that Anderson stabbed herself in the back and stomach with her knife as they each tried to gain control of the knife. On cross-examination, Baker admitted that he was twice the size of Anderson and had the nickname "Muscle Man" because of his muscular physique.

¶7.    The jury ultimately found Baker guilty of aggravated assault. Baker subsequently

filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied his motion. Baker now appeals.

## ANALYSIS

### 1. Was the jury adequately instructed on the State's burden of proof?

¶8. Baker argues that the trial court committed reversible error in failing to instruct the jury on the State's burden of proof because (1) the State's elements instruction did not include the language "not in necessary self defense"; and (2) no other instruction informed the jury of the State's burden to prove beyond a reasonable doubt that he did not act in self-defense.

¶9. At the end of trial, the State requested and received jury instruction S-1, which instructed the jury on the elements of aggravated assault:

### Jury Instruction S-1

The Defendant, THOMAS BAKER A/K/A "MUSCLE MAN", has been charged by an indictment with the crime of Aggravated Assault, a felony in the State of Mississippi.

If you find from the evidence in this case beyond a reasonable doubt that:

(1) On or about August 20, 2017, in Tunica County, Mississippi,

(2) The Defendant, THOMAS BAKER A/K/A/ "MUSCLE MAN", did willfully, **unlawfully** and feloniously, purposefully or knowingly cause bodily injury to Demetra Anderson A/K/A "Mee Mee,"

(3) with a deadly weapon to-wit: a knife,

(4) by stabbing the said Demetra Anderson A/K/A "Mee Mee" in the left chest and/or left flank and/or left shoulder,

then you shall find the Defendant, THOMAS BAKER A/K/A/ "MUSCLE

4

MAN," guilty of aggravated assault.

If the State has failed to prove any one or more of these elements beyond a reasonable doubt then you shall find the defendant not guilty.

(Emphasis added).

¶10.    In addition, Baker requested and received jury instructions D-2 and D-3, which instructed the jury on his theory of self defense:

### Jury Instruction D-2

The Court instructs the jury that to make an assault, justifiable on the ground of self defense, or defense of another, the danger must have been actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him, or another or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to apprehend that there was or is imminent danger of such design being accomplished. It is for the jury to determine the reasonable[ness] of the ground upon which the defendant acts.

If you the jury find that the defendant acted in self defense, then you must find the defendant not guilty.

### Jury Instruction D-3

The law tolerates no justification and accepts no excuse for an assault with a deadly weapon on the pleas of self defense except that the assault by the defendant on the victim was necessary or apparent[] so to protect the defendant's own life or his person from great bodily injury and there was immediate danger of such design being accomplished. The danger to life or of great personal injury must be or reasonably appears to be imminent and present at the time the defendant commits the assault with a deadly weapon . . . .

¶11.    The trial court's jury instruction C-1 informed the jury that it must consider the jury instructions as a whole. The trial court also gave jury instruction C-4, which emphasized the State's burden of proof on each element of the crime charged:

5

## Jury Instruction C-4

The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the [S]tate the burden of proving the defendant guilty of every material element of the crime with which he is charged. **Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty.**

The presumption of innocence attends the defendant through trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. **The defendant is not required to prove his innocence.**

(Emphasis added).

¶12. The trial court asked Baker twice if he had any objections to S-1, and he stated that he did not. Baker also had no objection to any of the trial court's jury instructions. The Mississippi Supreme Court "has held on numerous occasions that an offended party's failure to object to jury instructions at trial procedurally bars the issue on appeal." *Jones v. State*, 776 So. 2d 643, 653 (¶35) (Miss. 2000). Therefore, since Baker failed to object to any of the instructions, this issue is procedurally barred on appeal. However, this Court may still review jury instructions for "plain error." *See Fitzpatrick v. State*, 175 So. 3d 515, 522 (¶31) (Miss. 2015). "To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial." *Galloway v. State*, 122 So. 3d 614, 630 (¶18) (Miss. 2013). Further, the Mississippi Supreme Court has stated that plain error exists "only where a fundamental right of the defendant has been violated." *Fitzpatrick*, 175 So. 3d at 522 (¶31). Here, Baker argues that because the jury was not fully and fairly instructed on the

law of self-defense, he was deprived of his fundamental right to a fair trial.

¶13.   "[T]he standard of review for the denial of jury instructions is abuse of discretion." *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010).  The instructions must be read as a whole, and "if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found."  *Id*. (quoting *Rubenstein v. State*, 941 So. 2d 735, 784-85 (¶176) (Miss. 2006)).  Further, "[Mississippi caselaw] does not impose upon a trial court a duty to instruct the jury sua sponte, nor is a court required to suggest instructions in addition to those which the parties tender."  *Ballenger v. State*, 667 So. 2d 1242, 1252 (Miss. 1995) (quoting *Conner v. State*, 632 So. 2d 1239, 1254 (Miss. 1993), *overruled on other grounds by Weatherspoon v. State*, 732 So. 2d 158, 162 (¶13) (Miss. 1999)).

¶14.   "If warranted by the evidence, it is fundamental that a defendant is entitled to a jury instruction on his theory of the defense."  *Johnson v. State*, 749 So. 2d 369, 372 (¶10) (Miss. Ct. App. 1999) (citing *Slater v. State*, 731 So. 2d 1115 (¶12) (Miss. 1999)).  Further, "[w]hen self-defense becomes an issue, the State's instruction setting forth the elements of the crime should specifically place the burden of proof upon the State."  *Id*. at 374 (¶20).  However, this can be accomplished one of two ways; either the elements instruction can require the jury to find that the defendant was not acting in necessary self-defense, or one or more instructions can direct the jury to acquit a defendant who is found to be acting in self-defense.  *Id*.; *see also Reddix v. State*, 731 So. 2d 591, 595 (¶20) (Miss. 1999).

¶15.   In *Johnson*, the defendant appealed his convictions for manslaughter and capital murder, arguing that the court erred in refusing to give one of his proposed instructions on

self-defense. *Johnson*, 749 So. 2d at 372 (¶11). Notably, the State's elements instruction did not reference self-defense. *Id*. at 373 (¶13). However, the defendant requested and received two jury instructions on self-defense, and both of those instructions directed the jury to acquit the defendant if it found that he acted in self-defense. *Id*. at 374 (¶16). Jury Instruction D-2 provided that "if there arose 'a reasonable doubt of the existence of a single material fact upon which the guilt of the Defendant depends, then it is the law' that the defendant be given the benefit of the doubt and acquitted." *Id*. This Court held that the instruction "may be imperfect, but on balance it provided the guidance necessary that if there was any reasonable doubt about a determination that the jury was to make, Johnson was to be found not guilty." *Id*.

¶16. More recently, in *Phillips v. State*, 179 So. 3d 1218, 1220 (¶1) (Miss. Ct. App. 2015), the defendant appealed his conviction of simple assault and argued the trial court failed to properly instruct the jury that the State bore the burden of proving that he did not act in self-defense. The jury received S-1, an elements instruction, which made no reference to self-defense. *Id*. at 1222 (¶12). The defendant also received instruction D-8, which read as follows:

> The court instructs the jury that to make an assault justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present[,] and urgent, or the defendant must have reasonable grounds to believe that the victim was the first aggressor or intended to assault him . . . or to do him some bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts. If you, the jury, find that the defendant acted in self-defense, then it is your sworn duty to return a verdict in favor of the defendant.

8

*Id.* at (¶13).

¶17.    Ultimately, this Court found that Instruction D-8 "defined the law of self-defense and informed the jury that if it found that Phillips acted in self-defense in attacking Officer Harmon, then it was duly bound to return a verdict for Phillips." *Id.* at 1222 (¶15). Further, this Court held that S-1 combined with D-8 "fully informed the jury as to the State's burden of proof and Phillips's theory of defense" and "adequately informed the jury of the law to be applied and did not shift to Phillips the State's burden of proof as to any element." *Id.*

¶18.    Similar to *Johnson* and *Phillips*, the State's elements instruction contained no reference to self-defense. However, Baker did receive Jury Instruction D-2, which is virtually identical to Jury Instruction D-8 in *Phillips*; both instructions essentially stated that the jury must find the defendant not guilty if it found the defendant acted in self-defense. Further, the jury received Jury Instruction C-4, which clearly stated the State must prove the defendant guilty beyond a reasonable doubt. In accordance with *Johnson* and *Phillips*, we find that Jury Instruction D-2, combined with the State's elements instruction and Jury Instruction C-4, "fully informed the jury as to the State's burden of proof and [Baker's] theory of defense." *See Phillips*, 179 So. 3d at 1222 (¶15).[2]

### 2.    Did Baker receive ineffective assistance of counsel?

¶19.    Baker argues that his attorney was ineffective for failing to request an instruction explaining to the jury that the State had the burden to prove beyond a reasonable doubt that

---

[2] What is not reversible error in one case certainly may not be the more prudent course of action in another case. Explaining self-defense, and the burden of proof therein, in an elements instruction or in the other instructions provided to the jury is certainly required under our laws when self-defense is an issue.

Baker did not act in self-defense. "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016)). Such claims will be addressed on direct appeal when "[(1)] the record affirmatively shows ineffectiveness of constitutional dimensions, or [(2)] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id*. Additionally, such claims may be resolved "on direct appeal when the record affirmatively shows those claims are without merit." *Id*. After review, we find the record before us is sufficient to decide Baker's claim because Baker could not show any alleged "deficient performance" that prejudiced his defense.

¶20. To prove his counsel's assistance was ineffective, Baker must show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. A strong but rebuttable presumption exists that counsel's performance was effective. *Gilley v. State*, 748 So. 2d 123, 129 (¶20) (Miss. 1999). First, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Quinn v. State*, 191 So. 3d 1227, 1234 (¶27) (Miss. 2016) (quoting *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984)). Second, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Gilley*, 748 So. 2d at 129 (¶20) (quoting *Strickland*, 466 U.S. at 694). If the defendant cannot satisfy both *Strickland* prongs, his claim fails. *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶21.    As for the first prong, the question is whether Baker's attorney was deficient for failing to request an instruction explaining to the jury that the State had the burden to prove beyond a reasonable doubt that Baker did not act in self-defense. There is a presumption that decisions made by defense counsel are strategic, and this Court "will not second-guess counsel's decisions that fairly may be characterized as strategic." *Shinn v. State*, 174 So. 3d 961, 966 (¶12) (Miss. Ct. App. 2015). Our supreme court has held that "[w]hether to request a certain instruction generally is a matter of trial strategy." *McCoy v. State*, 147 So. 3d 333, 347 (¶36) (Miss. 2014) (citing *Havard v. State*, 928 So. 2d 771, 790-91 (Miss. 2006)). Furthermore, "[h]aving a trial strategy negates an ineffective assistance of counsel claim, regardless of counsel's insufficiencies." *Hall v. State*, 735 So. 2d 1124, 1127 (¶10) (Miss. Ct. App. 1999). In reviewing the record and the given jury instructions, we cannot say that Baker's attorney was deficient. As previously discussed, the jury was adequately instructed on the State's burden of proof with Jury Instructions S-1 and D-2. However, even if this Court found that Baker's attorney was deficient, that loses its legal significance when we consider the second prong of the required test.

¶22.    When considering the facts of this case, there is no doubt that Baker's claim fails because the record shows that he cannot satisfy the second *Strickland* prong. That prong requires us to determine whether there is a reasonable probability that the outcome at trial

would have been different had Baker's attorney requested an instruction on the State's burden to prove beyond a reasonable doubt that Baker did not act in self-defense. *See Gilley*, 748 So. 2d at 129 (¶20). Given the fact that Baker received an adequate self-defense instruction, there is simply no proof of prejudice caused by the attorney's alleged deficiency nor any indication that the outcome would have been different if the jury had received an additional instruction on the State's burden of proof. "[N]either [the Supreme Court] nor the Court of Appeals sits as [a] thirteenth juror. We do not make independent resolutions of conflicting evidence. Nor do we reweigh the evidence or make witness-credibility determinations." *Little v. State*, 233 So. 3d 288, 292 (¶20) (Miss. 2017). Those responsibilities rest with the jury. The jury heard testimony from Anderson and Baker at trial. Anderson claimed Baker attacked her as she was leaving the apartment complex and that he took her knife and stabbed her. Contrarily, Baker claimed that Anderson was the initial aggressor and that she held her knife to his face to gain entry into his apartment. He also claimed that Anderson stabbed herself. The jury heard the inconsistencies between these two stories, and those inconsistencies surely contributed to the jury's judging Baker's credibility. Ultimately, the jury did not believe Baker's version of events. For these reasons, we find Baker's claim for ineffective assistance of counsel is without merit.

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**