MAXWELL, J.,
for the Court:
¶ 1. A jury in the Stone County Circuit Court found Keith Boyda guilty of murdering his wife. On appeal, Boyda raises a weight-of-the-evidence argument challeng *63 ing the jury’s rejection of his insanity defense. We find sufficient evidence supporting the State’s position that Boyda understood right from wrong, including the testimony of two expert witnesses. Finding no merit to Boyda’s remaining arguments that the circuit court committed error in several evidentiary rulings, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. On April 26, 2005, Boyda and his wife argued for much of the afternoon in their home in Wiggins, Mississippi. Boyda at some point placed his 9-millimeter pistol in the waistband of his pants and went out to the front porch. Once outside, he fired several rounds from the pistol. He then re-entered the house, pulled his wife from the couch, and fired four 9-millimeter rounds into her shoulder, chest and back. Their fifteen-year-old daughter, Theresa Boyda, witnessed the shooting.
¶ 3. After the shooting, Boyda left the scene in his vehicle with Theresa and brought along a .22-caliber rifle. He made several stops. He first stopped at his neighbor’s house. But when the neighbor threatened to call the police, he drove Theresa to the nearby home of one of her friends, J.C.[1] While there, Theresa told J.C. that Boyda had just shot her mother. Meanwhile, J.C.’s mother, Melissa Scott, overheard Boyda admit to someone on the telephone, “She’s dead. She’s dead.” After hanging up, Boyda told Scott that he had killed his wife. As Boyda was leaving, he told Scott that she “could call the cops now.”
¶4. Boyda and Theresa then departed for Boyda’s mother’s home in ■ Gulfport, Mississippi. Before arriving, Boyda told Theresa that he “was sorry for everything” he had done. Boyda was eventually apprehended by the police at a gas station in D’Iberville, Mississippi.
¶ 5. Four expert witnesses testified about Boyda’s legal sanity. The defense offered two expert witnesses, one in the field of clinical psychology and the other a forensic psychiatrist. Both testified that at the time of the offense, Boyda was M’Naghten insane. In rebuttal, the State offered testimony from two experts — one in forensic psychology and the other in forensic psychiatry. Both testified that Boyda was legally sane when he killed his wife.
¶ 6. The jury convicted Boyda of murder, and the circuit court sentenced him to life imprisonment. On appeal, he argues: (1) the verdict is against the overwhelming weight of the evidence, and (2) the trial court’s evidentiary rulings prevented him from developing his theory of defense.
DISCUSSION
I. Weight of the Evidence
¶ 7. Boyda argues the verdict cannot stand because the weight of the evidence supports that Boyda was M’Naghten insane. He points to the following. First, after Boyda shot his wife in the presence of his daughter Theresa, he asked Theresa, “What should we do about Mommy?” Second,. Boyda’s counsel claims. Boyda “went visiting” with his daughter following the shooting, which no legally sane person would have done. Third, Boyda points to testimony that he talked to the turtles in his yard and that he claimed he “invented the air conditioning in his house,” among other unusual statements, as evidence he was not sane when he shot his wife.
¶ 8. When reviewing a claim based on the weight of the evidence, we evaluate *64 the evidence in the light most favorable to the verdict and “will only disturb [the] verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). We must accept as true all evidence consistent with the defendant’s guilt, along with any reasonable inferences that might be drawn from the evidence. Young v. State, 891 So.2d 813, 821 (¶ 21) (Miss.2005). An appellate court’s authority to grant a new trial based on the weight of the evidence should only “be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Bush, 895 So.2d at 844 (¶ 18).
A. M’Naghten
¶ 9. Mississippi follows the classic M’Naghten test to determine a criminal defendant’s sanity.
To establish a defense on the ground of insanity, it must be clearly proved that at the time of committing of the act the accused was laboring under such defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing, or (2) if he did know it, that he did not know that what he was doing was wrong. More succinctly, the test for insanity is whether the defendant was unable to distinguish right from wrong at the time the act was committed.
Roundtree v. State, 568 So.2d 1173, 1181 (Miss.1990) (internal citations and quotations omitted). Once the defendant raises a reasonable doubt as to his sanity, the State then must prove the defendant’s sanity beyond a reasonable doubt. Id. The jury determines the issue of insanity. Id. In making its decision, “the jury may accept or reject expert and lay testimony.” Id.
B. Expert Testimony
 ¶ 10. In Crawford v. State, 787 So.2d 1236 (Miss.2001), the Mississippi Supreme Court held that the jury verdict was not against weight of the evidence where one defense expert found the defendant M’Naghten insane, but the State’s two rebuttal experts found the defendant legally sane. Id. at 1243 (¶¶ 27-30). The supreme court reasoned when “there is testimony on both sides of the issue” of the defendant’s sanity, “a jury’s verdict [on that issue] is essentially conclusive and unreviewable.” Id. at (¶ 29). The court further explained: “[[Institutional and practical considerations mandate that in insanity defense cases, perhaps more than any other, a jury’s verdict ought to be given great respect and deference.” Id.
¶ 11. We are confronted with a similar “battle of the experts.” The defense offered Dr. Erin Skaff, who testified as an expert in clinical psychology, and Dr. Ren-nie Culver, who testified as an expert in forensic psychiatry. Dr. Skaff examined Boyda in July 2006 and diagnosed him as a paranoid schizophrenic. She believed to a reasonable degree of psychological certainty that Boyda did not know right from wrong when he shot his wife. Dr. Culver examined Boyda on April 3, 2006, and reported Boyda had a “psychotic disorder not otherwise specified.” At trial, he agreed with Dr. Skaff that Boyda had paranoid schizophrenia and was M’Naghten insane.
¶ 12. The State called two expert witnesses in rebuttal. Forensic psychologist Dr. Gilbert Macvaugh testified to a reasonable degree of psychological certainty that Boyda did not suffer from a major mental illness, such as schizophrenia, that impaired his ability to distinguish right from wrong. But Dr. Macvaugh explained that Boyda might suffer from paranoid person *65 ality disorder or narcissistic personality-disorder. Dr. Macvaugh pointed out that Boyda has never been treated for paranoid schizophrenia for forty years of his life, and it is very unusual for someone Boyda’s age to suddenly develop symptoms. Dr. Reb McMichael testified as an expert in forensic psychiatry, and he largely agreed with Dr. Macvaugh’s opinions. He echoed that Boyda did not have schizophrenia, but rather a personality disorder. Dr. McMi-chael agreed with Dr. Macvaugh that Boy-da knew the distinction between right and wrong when he killed his wife.
¶ 13. Boyda contends the State’s experts had to ignore their own testing, which did not detect malingering of schizophrenia symptoms. Yet Boyda had full opportunity to challenge this alleged inconsistency on cross-examination. Dr. Mac-vaugh explained that just because Boyda did not score in a range to suggest malingering at the time of the exam did not mean that he was not malingering at other times. Dr. Macvaugh’s conclusions were based in part on an interview, which occurred subsequent to the testing. During the interview, Boyda claimed he had no memory of the shooting. However, he told at least two other individuals about it immediately after it occurred, which Dr. Macvaugh concluded suggested malingering. In addition, Dr. McMichael considered notes from a nurse who attended to Boyda at the jail. The nurse’s notes reflected Boyda’s symptoms became “more obvious and dramatic right before a court appearance” and subsided once the court appearance was over, which Dr. McMicha-el found inconsistent with schizophrenia.
¶ 14. Boyda argues his inquiry to his daughter immediately following the shooting concerning what to do about “Mommy” shows convincingly that he was M’Naghten insane. But viewing the evidence in a light most favorable to the verdict, this statement could just as easily be interpreted as a solicitation of advice about the next course of action.
¶ 15. Boyda also claims his behavior after the shooting, which he characterizes as “visiting,” convincingly supports his insanity theory. However, his actions also support an inference of flight. In cases where the defendant has plead insanity, various other jurisdictions have held that a jury may draw an inference of guilt from the accused’s flight immediately following the commission of the crime. See Flenory v. State, 588 So.2d 940, 942 (Ala.Crim.App.1991) (“[T]he conduct of the appellant and his demeanor immediately following the criminal activity can provide an inference of sanity.”); Cunningham v. State, 426 So.2d 484, 490 (Ala.Crim.App.1982) (In insanity cases, “[f]light from justice, and its analogous conduct, [are] deemed indicative of a consciousness of guilt.”); Wallin v. State, 285 Ga.App. 377, 646 S.E.2d 484, 489 (2007) (finding no prejudice in ineffective-assistance-of-counsel claim in part because “flight can serve as evidence of defendant’s consciousness of guilt” in insanity cases) (citation and internal quotations omitted); Welborn v. Commonwealth, 157 S.W.3d 608, 615 (Ky.2005) (In insanity cases, “[fllight and attempt at concealment are circumstantial evidence of guilt because they suggest a guilty state of mind.”).
¶ 16. Following the shooting, Boyda demanded that Theresa, the only eyewitness to the shooting, leave from the scene with him. He armed himself with a .22 rifle, then took Theresa to the nearest neighbor’s house. When the neighbor threatened to call the police, they left. Theresa then suggested that they go to her friend J.C.’s home, hoping that he could help get her out of her predicament. Upon arrival, Boyda admitted to Melissa Scott that he had shot his wife and, notably, told, her that she “could call the cops now.” When *66 Boyda decided to leave, Theresa asked to remain with J.C. and Scott, but Boyda refused her request. Boyda and Theresa then got back on the road.
¶ 17. According to Theresa, Boyda eventually pulled over and stopped the vehicle on a road resembling a “pathway.” Boyda told her, “I’m sorry for everything I’ve done.” After speaking to Theresa for one or two hours, Boyda got back onto the highway to drive to his mother’s house in Gulfport. Police ultimately apprehended him when he stopped at a D’Iberville gas station.
¶ 18. We are not persuaded that' reasonable jurors must have concluded that Boyda’s behavior and statements directly following the shooting evidenced he was legally insane. Rather, the jury was certainly free to reasonably infer that by arming himself with a rifle, leaving the scene, and making several stops, Boyda was conscious of his guilt and was fleeing from the scene. We further note that Boyda apologized to his daughter for “everything,” and he refused to let her, the only eyewitness to the crime, leave, even after she requested to do so.
¶ 19. Given the expert testimony and circumstantial evidence supporting Boy-da’s legal sanity, we find that it was reasonable for the jury to find Boyda guilty of murder. We are unable to say that this is an exceptional case where the evidence preponderates heavily against the verdict. Nor do we find that allowing the verdict to stand would sanction an unconscionable injustice. Therefore, we conclude that the verdict is not against the overwhelming weight of the evidence.
II. Evidentiary Rulings
¶ 20. Boyda next claims the circuit court erred in limiting the testimony of his brother, Kyle Boyda. The excluded testimony pertains to Boyda’s behavior after the April 2005 shooting. Boyda’s trial counsel made an offer of proof, which suggests Kyle would have testified, among other things, that Boyda thought the FBI was trying to poison him and that local officials in Stone County were conspiring against him. Some of the testimony concerns behavior that occurred over four years after the shooting.
¶21. At trial, defense counsel argued this testimony was relevant to the question of whether Boyda had regained his sanity after committing the crime.[2] On appeal, Boyda’s counsel raises a different argument. He now claims the excluded testimony is relevant to whether Boyda was insane when he committed the crime.
¶ 22. This court has held that an argument not raised in the trial court will not be considered on appeal. Dimaio v. State, 951 So.2d 581, 587 (¶ 14) (Miss.Ct.App.2006) (citing Thorson v. State, 895 So.2d 85, 104 (¶ 43) (Miss.2004)) (declining to discuss the merits of the trial court’s refusal of a jury instruction because appellate counsel raised an entirely different argument than trial counsel); Aguilar v. State, 847 So.2d 871, 880 (¶ 23) (Miss.Ct.App.2002) (citing Holland v. State, 587 So.2d 848, 868 n. 18 (Miss.1991)) (argument that the trial court improperly excluded evidence was procedurally barred where the basis of the argument was different on appeal); see also Ponder v. State, 335 So.2d 885, 886 (Miss.1976) (“A trial judge cannot be put in error on a matter which was not presented to him for decision.”); *67 cf. Thompson v. State, 33 So.3d 542, 547 (¶ 15) (Miss.Ct.App.2010) (citing Swington v. State, 742 So.2d 1106, 1110 (¶ 9) (Miss.1999)) (“[A]n objection based on one specific ground waives all other possible grounds.”); Kiker v. State, 919 So.2d 190, 199 (¶ 34) (Miss.Ct.App.2005) (quoting Brown v. State, 682 So.2d 340, 350 (Miss.1996)) (“An objection at trial cannot be enlarged in a reviewing court to embrace an omission not complained of at trial”). The ground on which Boyda wished to admit the disputed evidence was rendered moot by the jury’s guilty verdict. Because his new argument that the evidence is relevant to his sanity at the time of the offense was not before the trial court, it is procedurally barred.
¶ 23. Still we note his claim lacks merit. Kyle, as a lay "witness, was precluded from stating an opinion as to Boyda’s sanity at the time he killed his wife based upon Boyda’s post-shooting behavior. See Baggett v. State, 793 So.2d 630, 635 (¶ 14) (Miss.2001) (quoting Russell v. State, 729 So.2d 781, 786 (Miss.1997)). We point out that Dr. Skaff spoke with Boyda’s brothers and considered information gathered from them in forming her opinions. And Dr. Skaff s testimony largely covered the same behavior included in the proffered testimony. Also, during Dr. Macvaugh’s cross-examination, Boyda’s attorney questioned him about much of this same behavior. Further, Kyle was permitted to testify fully regarding Boyda’s bizarre behavior prior to the shooting. If any error was committed in the exclusion of Kyle’s testimony, it was harmless. Jackson v. State, 594 So.2d 20, 25 (Miss.1992) (A trial court’s “admission or exclusion of evidence must result in prejudice and harm, if a cause is to be reversed on that account.”).
¶ 24. Boyda next claims that he was prejudiced by the State asking “irrelevant” questions about Dr. Skaff not being licensed to practice in Mississippi. However, Boyda’s trial counsel did not object to this line of questioning at trial. Thus, he failed to preserve this issue for appeal. See Jordan v. State, 995 So.2d 94, 111 (¶ 55) (Miss.2008). Boyda also failed to raise this issue in his motion for a new trial, which serves as an additional procedural bar to our review. See Watts v. State, 492 So.2d 1281, 1291 (Miss.1986) (citing Pool v. State, 483 So.2d 331, 336 (Miss.1986)).
¶ 25. Boyda finally contends the circuit court erred by excluding Dr. Skaff s resume. Because Boyda was given ample opportunity to, and did, bolster Dr. Skaff s qualifications through questioning, we find no error in the exclusion of her resume. See Herrington v. Spell, 692 So.2d 93, 103 (Miss.1997), overruled on other grounds Whittington v. Mason, 905 So.2d 1261 (Miss.2005).
¶ 26. Finding no reversible error, we affirm Boyda’s conviction and sentence.
¶ 27. THE JUDGMENT OF THE STONE COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO STONE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. The record is not clear what J.C.’s last name is.

. See Miss.Code Ann. § 99-13-7(1) (Supp. 2010) ("When any person is indicted for an offense and acquitted on the ground of insanity, the jury rendering the verdict shall state in the verdict that ground and whether the accused has since been restored to his sanity and whether he is dangerous to the community.").