# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00699-COA

EARNEST VARNADO, JR. A/K/A JUNIOR A/K/A EARNEST EARL VARNADO          APPELLANT

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/14/2014 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF UNLAWFUL POSSESSION OF MORE THAN FORTY DOSAGE UNITS OF BENZYLPIPERAZINE, AND SENTENCED, AS A HABITUAL OFFENDER, TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; AND CONVICTED OF RESISTING ARREST, AND SENTENCED TO A CONCURRENT TERM OF SIX MONTHS IN THE CUSTODY OF THE PIKE COUNTY SHERIFF'S DEPARTMENT AND TO PAY A $10,200 FINE |
| DISPOSITION: | AFFIRMED –10/13/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND FAIR, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1. Earnest Varnado appeals his conviction by a Pike County jury of one count of possession of more than forty dosage units of benzylpiperazine (BZP), a controlled substance, and one count of resisting arrest. Varnado's arguments may be summarized as follows: (1) the State failed to establish a predicate for the admission of the controlled substance into evidence; (2) his sentence amounts to cruel and unusual punishment; (3) the circuit court erred in denying his motion for a mistrial; (4) the circuit court erred in denying his motion for a new trial; and (5) the cumulative effect of the errors requires a reversal of his conviction.

¶2. We find no merit to any of Varnado's arguments. Therefore, we affirm his conviction and sentence.

FACTS

¶3. On June 7, 2013, three vehicles from the Pike County Sheriff's Department pulled up behind Varnado as he turned into his mother's driveway on Ed Brumfield Road in Osyka, Mississippi. The Pike County officers were assisting the McComb Police Department in serving an arrest warrant on Varnado. Varnado exited his vehicle and began running toward a wooded area. Deputies John Speed and Terry Beadles exited one of the law enforcement vehicles and instructed Varnado to stop. When Varnado refused to stop, Deputies Speed and Beadles chased him into the woods. Varnado climbed over a fence, snagged his foot, and fell. After the fall, Deputy Speed attempted unsuccessfully to tase Varnado. Varnado started

2

to run, and Deputies Speed and Beadles continued to chase him. Lieutenant Brian Mullins paralleled the chase in a second law enforcement vehicle. At some point, Lieutenant Mullins exited his vehicle and tased Varnado. Varnado fell to the ground, and Lieutenant Mullins handcuffed him. Deputy Beadles performed a pat-down search of Varnado and found a plastic bag of pills in Varnado's front-left pocket. Varnado was then arrested. Subsequently, a Pike County grand jury indicted him as a habitual offender for one count of possession of more than forty dosage units of BZP, one count of possession of a firearm by a convicted felon, and one count of resisting arrest.

¶4.    At trial, Deputy Speed testified that at the time of Varnado's arrest, Deputy Beadles gave him the pill bag that was found in Varnado's front pocket. Deputy Speed stated that he then placed the bag inside his shirt pocket and took it to the sheriff's department, where he logged the bag into evidence and dropped it in the slot-sized opening of the Southwest Mississippi Narcotics Enforcement Unit's (Unit) narcotics locker. Deputy Speed's report, written the day of the arrest, stated that he found "one clear plastic bag containing small blue pills which appear[ed] to be ecstasy." On cross-examination, Deputy Speed clarified that at his behest, Deputy Beadles had performed the pat-down of Varnado but that he still considered the bag his "find."

¶5.    Deputy Beadles confirmed that he handed the bag of pills to Deputy Speed after finding them in Varnado's pocket, and he believed that Deputy Speed placed the pills in the Unit locker. Deputy Beadles testified that, normally, evidence is sealed inside an evidence

3

bag, and a label is placed on it describing where it was retrieved from. The defendant's name, along with the name of the officer that retrieved the evidence, is also placed on the label that is attached to the plastic bag. Deputy Beadles was certain that this procedure was followed with the bag that was removed from Varnado's pocket on the day of Varnado's arrest.

¶6. Agent Jason Duncan, who was assigned to the Unit, testified that he either retrieved the pills from the Unit locker or received them from Deputy Speed himself and transported them to the Mississippi Crime Lab in Jackson, Mississippi. Adrian Hall, a forensic scientist at the crime lab, testified that he performed a chemical analysis of the pills that were tendered to the crime lab by Agent Duncan and that the analysis determined the pills to be BZP.

¶7. After the close of all of the evidence, as stated, the jury found Varnado guilty on one count of possession of more than forty dosage units of BZP and one count of resisting arrest. However, the jury acquitted him of the firearm charge. The circuit court sentenced Varnado, as a habitual offender, to thirty years for his conviction for possession of more than forty dosage units of a controlled substance and to a concurrent term of six months for resisting arrest, with the thirty years to be served in the custody of the Mississippi Department of Corrections (MDOC) and the six months to be served in the Pike County Jail. This appeal followed.

DISCUSSION

I.    Chain of Custody

4

¶8.     Varnado's first issue is that the State failed to establish a sufficient chain of custody for the admission of State Exhibit 4, which is the crime lab report of the analysis of the pills that were confiscated from him.  What Varnado actually means is that the State failed to establish a sufficient chain of custody for the admission of Exhibit 2, which is the bag of pills that was removed from his front pocket when he was arrested.  Specifically, Varnado argues that there are discrepancies about who handled the evidence and that there is an ambiguity as to the description and number of pills confiscated.  Varnado points out that Deputy Speed testified that Deputy Beadles took the pills from Varnado, but Deputy Speed's report stated that Deputy Speed actually found the pills.  Varnado also points to how Deputy Speed stated that he logged the pills into evidence, but then how, when reviewing the exhibit, Deputy Speed stated that he did not sign the evidence tag and that he did not recognize the bag.  Also, Varnado notes that Agent Duncan stated that he did not remember how he received the bag of pills.  Varnado argues that there was a discrepancy as to the number of pills found—forty-one and forty-three units were identified—and that the color of the pills varied from report to report.

¶9.     After thoroughly reviewing the record, we find that Varnado's characterization of Deputy Speed's and Agent Duncan's testimonies is misleading and disingenuous.  When taken in totality, the record reflects a sufficient chain of custody.  In *Steen v. State*, 873 So. 2d 155, 159 (¶11) (Miss. Ct. App. 2004) (internal citations and quotation marks omitted), we explained:

5

Admission of evidence is within the discretion of the trial judge. Furthermore, matters regarding the chain of custody of evidence are largely within the discretion of the trial court, and absent an abuse of discretion, reversal will not be granted. We have recognized that any indication of tampering or substitution of evidence is the proper test for assessing the sufficiency of the chain of custody. If there is a reasonable inference of tampering or substitution, then the proof is insufficient to support a finding that the matter in question is what it purports to be. However, the court has never required a production of every person who handled the object or an accounting of every moment in order to establish [a] proper chain of custody.

Here, the circuit court found that the State established a reliable chain of custody. Deputies Beadles and Speed testified that the pills that were sent to the crime lab were the same pills found on Varnado on the day of the arrest. They described an unbroken chain of custody showing that the pills were removed from Varnado's pocket by Deputy Beadles, who gave them to Deputy Speed. Deputy Speed testified that he placed them in the Unit. Agent Duncan testified that he retrieved the pills from Deputy Speed or the Unit and transported them to the crime lab. Hall testified that he performed a chemical analysis on the pills after they were delivered to the crime lab and that some of the pills were destroyed in the analysis process. Hall's testimony clarifies why there were fewer pills in Exhibit 2 than the number removed from Varnado's person. The destruction of pills during the testing process does not equate to tampering or substituting evidence. Therefore, based on the evidence presented with respect to the chain of custody of the pills removed from Varnado's person, we cannot find that the trial court erred in admitting Exhibits 2 or 4.

¶10. Varnado also argues, for the first time, that State Exhibit 4 is not subject to a presumption of regularity because the State did not prove that the deputies who handled the

6

pills did so in a manner that supports the presumption of regularity. "This [C]ourt has held that an argument not raised in the trial court will not be considered on appeal." *Boyda v. State,* 57 So. 3d 61, 66 (¶22) (Miss. Ct. App. 2011) (citations omitted). Therefore, because this issue was not raised in the circuit court, it is procedurally barred. *See Ponder v. State,* 335 So. 2d 885, 886 (¶7) (Miss. 1976) ("A trial judge cannot be put in error on a matter which was not presented to him for decision."). Procedural bar notwithstanding, the Mississippi Supreme Court has held that "the test for the continuous possession of evidence is whether . . . there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." *Gilley v. State,* 748 So. 2d 123, 127 (¶11) (Miss. 1999) (internal quotations and citations omitted). "'[T]he burden of proof to produce evidence of a broken chain of custody (i.e., tampering) is on the defendant.'" *Id.* (quoting *Hemphill v. State,* 566 So. 2d 207, 208 (Miss. 1990)). Here, Varnado has not produced any proof of any tampering with or substitution of the evidence. The Mississippi Rules of Evidence have established that the authentication of evidence is satisfied when there is sufficient proof that the matter in question is what its proponent claims. M.R.E. 901(a). Also, "[t]here is a presumption of regularity favoring [the] chain of custody of objects under police control." *Moen v. State,* 861 So. 2d 1066, 1069 (¶13) (Miss. Ct. App. 2003) (citing *Barnes v. State,* 763 So. 2d 216, 222 (Miss. Ct. App. 2000)).

¶11.    The circuit court has discretion to decide whether a proper chain of custody is established. *Giley,* 748 So. 2d at 127 (¶11) (citing *White v. State,* 742 So. 2d 1126, 1133

7

(Miss. 1999)).  Here, the circuit court decided that the State produced enough testimony to prove  a sufficient chain of custody and that the pills presented at trial were, in fact, those taken out of Varnado's front pocket.  Therefore, this Court need not determine whether a presumption of regularity applies to Exhibits 2 or 4, and we cannot find that the circuit court erred in admitting those exhibits.  This issue is without merit.

## II.    *Cruel and Unusual Punishment*

¶12.    Varnado's next argument is that his sentence is disproportionate to the crime and constitutes cruel and unusual punishment under the Eighth Amendment.  However, Varnado also failed to present this argument to the circuit court.  When an appellant fails to object to or contest his sentence during the sentencing hearing, the issue is procedurally barred on appeal.  Because Varnado failed to object to or contest his sentence at the time of sentencing, this issue is procedurally barred.  *See Boyda*, 57 So. 3d at 66 (¶22) (citing *Dimaio v. State*, 951 So. 2d 581, 587 (¶14) (Miss. Ct. App. 2006)).

¶13.    Procedural bar notwithstanding, this issue is without merit.   In support of his argument, Varnado cites *Solem v. Helm*, 463 U.S. 277 (1983).  In *Solem,* the United States Supreme Court established a three-part test for courts to follow in deciding whether a sentence violates the Eighth Amendment and is disproportionate to the crime committed. *Solem,* 463 U.S. at 292.  Under *Solem*, courts must consider: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other

8

jurisdictions." *Id. Solem* was overruled by *Harmelin v. Michigan*, 501 U.S. 957 (1991), "to the extent that it found a guarantee of proportionality in the Eighth Amendment." *Hoops v. State,* 681 So. 2d 521, 538 (Miss. 1996) (citations omitted). The Mississippi Supreme Court has held that, "[i]n light of *Harmelin,* it appears that *Solem* is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.'" *Hoops,* 681 So. 2d at 538 (internal citations and quotations omitted).

¶14.   Our supreme court has further held that sentences arising "under the habitual-offender statute do not constitute cruel and unusual punishment." *Skinner v. State,* 120 So. 3d 419, 426 (¶25) (Miss. 2013) (citation ommitted). The Mississippi Supreme Court enforced the constitutionality of this state's habitual-offender statute in *Bridges v. State,* 482 So. 2d 1139 (Miss. 1986). In *Bridges,* the appellant pleaded guilty to a charge of capital murder before a circuit court and was sentenced as a habitual offender to serve life in prison without parole. On appeal, the appellant argued that the application of the habitual-offender law to his case violated the United States Constitution's Eighth Amendment prohibition against cruel and unusual punishment. Our supreme court held that the habitual-offender law was constitutional and that the appellant's sentence did not constitute cruel and unusual punishment. *Id.* at 1140. The supreme court stated that "a sentence which does not exceed statutory limits is not cruel or unusual punishment." *Id.* (quoting *Baker v. State,* 394 So. 2d 1376 (Miss. 1981)) (internal quotation marks omitted).

¶15.   The statute's constitutionality was upheld again by our supreme court in *Tate v. State,*

9

912 So. 2d 919 (Miss. 2005). In *Tate,* the appellant was sentenced as a habitual, and a subsequent drug offender under Mississippi Code Annotated sections 99-19-81 and 41-29-147 (Rev. 2005), to serve sixty years in the custody of the MDOC for one count of possession of marijuana and one count of possession of marijuana with the intent to distribute. *Id.* at 922-23 (¶3). On appeal the appellant argued that his sentence should have been evaluated under *Solem*'s three-part proportionality analysis and that his sentence was cruel and unusual punishment. *Id.* at 932 (¶46). The supreme court found that the sentence was within the statutory guidelines for the crime that the appellant was convicted of and that the trial court had sentenced him correctly. *Id.* at 933 (¶51). The supreme court held that an extremely lengthy sentence does not mean that the sentence is grossly disproportionate to the crime. *Id.* at 934 (¶52).

¶16. Here, Varnado was indicted as a habitual offender, with his prior convictions listed in his indictment. The circuit court sentenced him as a habitual offender pursuant to section 99-19-81. Under section 99-19-81, a circuit court shall sentence a habitual offender to the maximum sentence specified for the charged offense. Varnado was convicted of possessing more than forty dosage units of BZP in violation Mississippi Code Annotated section 41-29-139(c)(1)(E) (Rev. 2013), which carries a penalty of imprisonment of up to thirty years.[1] Varnado's sentence is within the statutory limits of section 41-29-139(c)(1)(E) (Rev. 2013),

---

[1] Section 41- 29 - 139 has since been amended by 2014 Miss. Laws Ch. 457, § 37 (H.B. 585) (eff. July 1, 2014). Section 41-29-139(c)(1)(E) was deleted. However, it was still in effect at the time of Varnado's sentencing on April 14, 2014.

and the circuit court acted within its discretion in sentencing him.  Therefore, we find no error.

### III.    Motion for a Mistrial

¶17.    Varnado argues that the circuit court erred when it denied his motion for a mistrial after Agent Duncan's statement regarding Varnado's post-*Miranda*[2] silence.  At trial, the following exchange occurred between the prosecutor and Agent Duncan:

> PROSECUTOR:    Did you come in contact with Earnest Varnado, Jr.?
>
> DUNCAN:    I did.
>
> PROSECUTOR:    What—what happened?
>
> DUNCAN:    Just spoke with him for a moment in the jail, got his general information.  He refused to speak with me.

Following this colloquy, Varnado objected and moved for a mistrial.  The circuit court denied the motion.

¶18.    The Mississippi Supreme Court has held that "it is improper and, ordinarily, reversible error to comment on the accused's post-*Miranda* silence.  And when the trial [court] determines that the error does not reach the level of prejudice warranting a mistrial, the [court] should admonish the jury to disregard the impropriety to cure its prejudicial effect." *Quick v. State*, 569 So. 2d 1197, 1199 (Miss. 1990).  However, our supreme court has also stated:

---

[2] *Miranda v. Arizona,* 384 U.S. 436 (1966).

11

> Whether to grant a motion for [a] mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for [a] mistrial is abuse of discretion. Further, the test for whether reversal is required as a result of a prosecutor's improper comment at trial is whether or not the natural and probable effect of the statement is to create an unjust prejudice against the accused so as to result in a decision influenced by prejudice.

*Gunn v. State*, 56 So. 3d 568, 571 (¶14) (Miss. 2011) (internal citations and quotations omitted). Here, the circuit court noted that the prosecution "didn't need to go there. But at this point[,] [the court] certainly think[s] [the prosecution's conduct] [is] harmless." We agree. In *Gunn*, the supreme court explained that "errors may be deemed harmless when 'the same result would have been reached had they not existed.'" *Id.* at 572 (¶16) (quoting *Tate v. State,* 912 So. 2d 919, 926 (¶18) (Miss. 2005)). The court further explained that reversal is not always required in cases where the prosecutor has asked questions about the defendant's post-*Miranda* silence—specifically specifying such cases where the evidence weighs overwhelmingly against the defendant. Here, the State produced multiple witnesses who linked Varnado to the pills and testified that he, in fact, ran from the officers, thereby resisting arrest. Also, the State did not mention Varnado's post-*Miranda* silence anymore after the brief exchange between Agent Duncan and the prosecutor. We find that the circuit court did not abuse its discretion in denying the motion for a mistrial.

    *IV.    Motion for a New Trial*

¶19. Varnado's next argument is that the verdict is against the overwhelming weight of the evidence. The standard of review in determining whether a jury's verdict is against the overwhelming weight of the evidence is well settled. "In deciding whether a jury verdict is

12

against the overwhelming weight of the evidence, an [appellate court] will disturb a jury verdict only when it is so contrary to the overwhelming weight of evidence that allowing it to stand would sanction an unconscionable injustice." *Martin v. State*, 970 So. 2d 723, 726-27 (¶17) (Miss. 2007) (citing *Taggart v. State*, 957 So. 2d 981, 987 (Miss. 2007)). Varnado argues that he is entitled to a new trial because of the discrepancies pertaining to the color and the number of the pills. As to the discrepancies found in Deputy Speed's testimony about the color of the pills, we note that "[e]videntiary conflicts and credibility issues are questions for the jury, not grounds for a new trial." *Flowers v. State*, 156 So. 3d 805, 805-06 (¶1) (Miss. 2013). Here, the jury believed Deputy Speed's testimony that the pills presented at trial were the same as those taken from Varnado. Based on the indictment, the State had to prove that Varnado possessed more than forty dosage units of a controlled substance. The evidence showed that Varnado possessed forty-one or forty-three dosage units, which are both greater than the forty dosage units specified in the indictment. Therefore, this issue is without merit. The jury's verdict is not against the weight of the evidence, and allowing it to stand will not sanction an unconscionable injustice.

### V. Cumulative Error

¶20. Varnado's last argument is that the cumulative effect of individual errors deprived him of his right to a fundamentally fair and impartial trial. Under the cumulative-error doctrine, "individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of

a fundamentally fair trial." *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007) (citing *Byrom v. State*, 863 So. 2d 836, 847 (¶12) (Miss. 2003)). "However, where there is no error in part, there can be no reversible error to the whole." *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007) (citing *Gibson v. State*, 731 So. 2d 1087, 1098 (¶31) (Miss. 1998)). After a thorough review of the record, we cannot find that there were multiple harmless errors committed. Consequently, we find this issue is without merit. Accordingly, we affirm.

¶21. **THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF UNLAWFUL POSSESSION OF MORE THAN FORTY DOSAGE UNITS OF BENZYLPIPERAZINE AND SENTENCE, AS A HABITUAL OFFENDER, OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND CONVICTION OF RESISTING ARREST AND SENTENCE TO A CONCURRENT TERM OF SIX MONTHS IN THE CUSTODY OF THE PIKE COUNTY SHERIFF'S DEPARTMENT AND TO PAY A $10,200 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**