# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00664-COA

**MATTHEW T. MURPHY A/K/A MATTHEW MURPHY**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                  **APPELLEE**

DATE OF JUDGMENT:              10/19/2023
TRIAL JUDGE:                  HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED:    HANCOCK COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                              BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: JULIANNE KAY BAILEY
DISTRICT ATTORNEY:            WILLIAM CROSBY PARKER
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 05/26/2026
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND WEDDLE, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     Matthew Murphy appeals his convictions by a Hancock County Circuit Court jury of two counts of attempted touching of a child for lustful purposes. The circuit court sentenced Murphy to fifteen years of imprisonment on each count, with the sentences set to run consecutively, for a total of thirty years, and with ten years suspended and twenty years to serve "day for day with no hope of parole" in the custody of the Mississippi Department of Corrections (MDOC). The court further ordered that thereafter Murphy be placed on five years of reporting post-release supervision and then five more years of non-reporting post-release supervision.

¶2.    On appeal, Murphy argues that the court erred in instructing the jury that the uncorroborated testimony of a sex-crime victim is sufficient for a conviction if the jury accepts the victim's testimony as true.  Having considered the record, the arguments of counsel, and relevant precedent, we affirm Murphy's convictions and sentences.

**Facts and Procedural History**

*Facts*

¶3.    On September 22, 2012, Murphy went camping with his daughters, Maddie, age 6, and Kate, age 3, at Buccaneer State Park.[1]  Murphy had filed suit to establish his paternity of the children and had been initially granted supervised, and then unsupervised, visitation with the girls.  Murphy's lady friend, Mary Gros, who had just met the children, joined them on the camping trip.

¶4.    Gros said she left the campsite to go to work on Saturday morning, returned after work for a brief time, but then left to "take care of some things."  When she left, the children were fine.  However, when she returned to the park around 7:00 p.m., she found Murphy intoxicated and naked, with Kate standing in front of him, also naked.  Maddie was in her bathing suit, and both girls were crying.  Maddie told Gros that Murphy asked her to "lick his privates."  Maddie said that when she refused, Murphy kept putting his penis in her face, and he spanked her.  Kate said Murphy also tried to make her "suck his privates."

¶5.    Murphy was so drunk and incoherent that he could not tell Gros what had happened.  Gros said that in the short time she was gone, Murphy had drunk nearly a whole bottle of

---

[1]  Pseudonyms are used to protect the children's privacy.

alcohol. Murphy became belligerent and got in Gros's car, still naked, broke the windshield, and tore off the rear-view mirror. Gros called the police, and when they arrived, Murphy had fallen asleep in the car. He then fought with the officers who tried to get him out and dressed. The next day, Murphy called Gros from jail and asked what happened because he did not remember anything.

¶6.     The children were taken to the local hospital emergency room, and at trial, ER nurse Heather Windham testified Maddie told her that Murphy had spanked her and "kept wanting her to lick his privates." Maddie's physical exam revealed a redness in her genital area. Kate's exam, however, was unremarkable.

¶7.     A few days later, the girls were also questioned by Laura Johnson, a forensic interviewer with Hope Haven Child Advocacy Center. Johnson testified that both Maddie and Kate said Murphy had tried to make them "suck his private." The children's interviews were videotaped.

¶8.     Murphy was arrested for two charges of sexual battery of a child. On February 13, 2013, he was released upon posting a $25,000 bond.

*Procedural History*

¶9.     A Hancock County grand jury indicted Murphy on May 2, 2014, for two counts of attempted touching of a child for lustful purposes in violation of Mississippi Code Annotated section 97-5-23(1) (Rev. 2006).[2] However, Murphy left the jurisdiction after his arrest and

---

[2] Section 97-5-23(1) provided:

(1) Any person above the age of eighteen (18) years, who, for the purpose of

3

was not found for eight years.[3] During that time, Murphy used various aliases and moved from state to state. Ultimately, in 2022, Jerry Stillwell of the United States Marshals Service located Murphy in Canada and successfully had him returned to Mississippi to stand trial.

¶10. After several continuances, the Hancock County Circuit Court tried Murphy on October 17, 2023. The day before, the court had heard testimony from Gros and Johnson that related to the children's statements made in 2012 so that the court could determine if those hearsay statements would be admissible under the tender years exception to the rule prohibiting hearsay. *See* MRE 803(25). Gros recounted the events of the evening and what the girls spontaneously told her when she asked why they were naked. The girls, who were crying and shaking when she arrived, repeatedly said that Murphy had made them lick his

gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen (16) years, with or without the child's consent, or a mentally defective, mentally incapacitated or physically helpless person as defined in Section 97-3-97, shall be guilty of a felony and, upon conviction thereof, shall be fined in a sum not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00), or be committed to the custody of the State Department of Corrections not less than two (2) years nor more than fifteen (15) years, or be punished by both such fine and imprisonment, at the discretion of the court.

Miss. Code Ann. § 97-5-23(1) (Rev. 2006).

[3] Notice was given to his bonding company that Murphy's arraignment was set for June 16, 2014. When Murphy did not appear, the court continued the arraignment to October 6, 2014, revoked Murphy's bond, and issued an arrest warrant for him. Again Murphy did not appear, and his bonding company asked for another extension, noting that Murphy had "been in several states outside of the 150 miles area of which he was listed on NCIC to be extradited. Defendant is now listed nationwide." The court continued the arraignment to April 16, 2016, at which time the court issued a judgment against the bonding company. On July 29, 2016, the bonding company paid the court the $25,000 judgment for failing to present Murphy as required.

4

penis. Johnson, a trained forensic interviewer with experience in talking to sex-crime victims since 2004, testified about the protocols she followed at the Child Advocacy Center and the specifics of her interviews with Maddie and Kate. Both girls told her that Murphy tried to make them lick his penis. Maddie said when she refused, he spanked her. Maddie also told Johnson that Murphy would bathe her, despite her protests that she was old enough to do it herself, and that he would "touch her with a washcloth." Johnson said both girls provided the information spontaneously and with no indication of deceit. The court ruled the next day after the girls testified and when the children's hearsay statements were sought to be admitted, finding they were admissible under the tender years exception to the rule against admitting hearsay.

¶11. Murphy's trial began the next day, and the witnesses who testified included Gros, Johnson, Windham, Eddie Peterson (detective with the Waveland Police Department who responded to the call), Stillwell, Maddie, Kate, and Cheryl, the girls' great aunt. Murphy testified in his defense.

¶12. Detective Peterson told the jury what he found when he arrived at the campsite and the difficulties he had in dealing with Murphy, which confirmed Gros's account of the events.[4] The State entered photographs that Peterson had taken of the scene that night. Stillwell explained how the United States Marshals Service assisted local law enforcement

---

[4] Peterson said Murphy fought him and had to be pepper-sprayed. Once outside the vehicle, Murphy tried to run from the scene. Peterson identified photographs taken at the campsite, including one of a near-empty bottle of alcohol, and one of men's underwear on the top of the tent.

in searches for individuals and how he located Murphy in Canada.

¶13.    Maddie, who was seventeen, testified to the events at the campsite when she was six. She said that after Gros had left to get them food, Murphy "got naked" and "was trying to get me to suck his penis." Maddie said Murphy did the same thing with Kate, and Maddie told Kate not to do it. Murphy got angry and ended up pushing her (Maddie). After Maddie, Kate, now age fourteen, testified that Murphy tried to make her "suck his dick." She said that she did it one time when she and Murphy were in the tent, but she did not do it again because Maddie got her out of the tent to get her away from Murphy. Murphy chose not to cross-examine either of the girls.

¶14.    Before Gros, Johnson, and Windham testified, the court heard arguments outside the presence of the jury about the admissibility of the hearsay statements that the girls made to these witnesses at the time of the incident. The court ruled that the statements qualified as a tender years exception to the hearsay rule. The jury returned, and Gros proceeded to testify about the incident at the campsite, Windham testified about her emergency room examination, and Johnson testified about the Child Advocacy Center interviews, including what the children told each of them. These interview videos were admitted into evidence and shown to the jury.

¶15.    Cheryl, Kate's adoptive mother and the natural great-aunt of both girls, testified that Murphy had initiated a paternity action a year before the incident.[5] Testing revealed that

_____

[5] Cheryl explained that her sister, Michelle, the grandmother of the two girls, was given their custody by the youth court judge when the girls' mother, Amanda, had neglected them. Michelle could not financially handle taking care of both girls and gave Kate to

6

Murphy was the girls' biological father, but because they did not know him, the court granted Murphy supervised visitation at first and then unsupervised visitation with the children. After the incident at the park, both children were placed in Cheryl's care. Cheryl testified that a few days later, when she and Kate were shopping at the local grocery store and going down the bread aisle by the hot dog buns, the child looked at the ceiling and repeatedly said, "I said, suck my cock."

¶16.   After Cheryl's testimony, the State rested. Murphy moved for a directed verdict, which the court denied. Thereafter, Murphy testified to his version of events at the campsite—namely, that after Gros left to get something, he brought some logs from the woods for the campfire. Murphy said ants got all over him, and Maddie helped him brush them off. He took a couple of drinks from a bottle of bourbon he had brought with him and became ill. He went into the woods to defecate. Murphy said that the girls came to him while he had his pants down because it was dark, and they were afraid. They wanted the stuffed animals he had bought them. Murphy said he got the toys, put the girls in the tent, and returned to the woods. But he said the girls came looking for him again. When this happened a third time, Murphy, who had taken off his pants, put on his underwear to take them back to the tent. He "popped [Maddie] on the butt" because she was supposed to have kept Kate in the tent with her. Kate, for some reason, was naked, and Murphy began to think about getting her something to wear when he started to fall asleep.

¶17.   That is when Gros returned. When she asked what was going on, Murphy said that

---

Cheryl.

7

he tried to talk but could not speak.  He went and sat in her car to conceal himself from the children.  He said he felt like he was drowning, and as he was flailing his hands, he hit the rear-view mirror, which broke the windshield.  He then fell asleep.  He woke up once and found himself running in the woods.  He remembered a police officer coming up and hitting him.  Murphy denied ever asking either of his daughters to touch or lick his penis.  He claimed he was unaware of the indictment when he left Mississippi, and he explained how he went to Canada and "had a religious experience."

¶18.    After the close of testimony, the court reviewed the proposed jury instructions, including S-7, which allowed the jury to convict Murphy if they believed the uncorroborated testimony of the sex-crime victims.  Murphy objected, saying, "The Court's instructions I believe are enough."  The State responded that this statement of the law came from a long line of cases, most recently *Parks v. State*, 228 So. 3d 853 (Miss. Ct. App. 2017), *cert. denied*, 220 So. 3d 977 (Miss. 2017), and *Power v. State*, 66 So. 3d 155 (Miss. Ct. App. 2010).  The court gave the jury instruction.

¶19.    After closing arguments by counsel, the jury was excused at 10:20 a.m. to deliberate.  At 11:13 a.m., the jury reached a verdict of guilty on both counts.  The jury was polled, and the verdict was unanimous. The court proceeded to sentencing and heard impact statements from Maddie and Kate that the prosecution read into the record.  The children spoke of the loss of their innocence because of Murphy's actions, the fears they experienced over the years about possibly encountering him again, and their resolve to move on despite the damage Murphy had inflicted upon them.  Murphy was allowed to address the court as well.

He spoke of matters prior to the incident, concerning his filing for paternity and custody of the girls, an automobile accident he had, and how he heard a voice telling him to end the lawsuit. After this, the court imposed its sentence.

¶20. On October 30, 2023, Murphy filed a pro se motion for a new trial. He claimed, inter alia, that the court would not allow evidence he wanted to present because it came from youth court; that the prosecutor was allowed to coach witnesses though narratives; that his attorney failed to raise several critical points, did things at the last minute, and refused to subpoena witnesses; that he (Murphy) was brought before the jury in shackles three times; and that nothing was said about the "psychological implications of repeated ideas into the minds of hypnotized subjects from expert sources." He did not raise the issue of improper jury instructions.

¶21. On February 29, 2024, Murphy's counsel filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Murphy additionally claimed that the evidence was insufficient as a matter of law, that the verdict of the jury was contrary to the overwhelming weight of the evidence, that the jury failed to follow the court's instructions, that the court erred in admitting certain items and testimony into evidence, and that cumulative error required a new trial. On May 8, 2024, the court denied Murphy's post-trial motions.

¶22. Murphy appealed and raises only one issue: whether the court erred by giving Jury Instruction S-7, which stated that the jury could convict him based on the uncorroborated testimony of a sex-crime victim witness if the jury accepted the testimony as true.

9

**Standard of Review**

¶23. "We 'review the grant or denial of proposed jury instructions for an abuse of discretion.'" *Adame v. State*, 401 So. 3d 204, 207 (¶16) (Miss. Ct. App. 2025) (quoting *Pitts v. State*, 291 So. 3d 751, 755 (¶17) (Miss. 2020)). We consider the jury instructions as a whole, and "if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id*. at (¶18).

**Discussion**

¶24. At trial, Murphy objected to Jury Instruction S-7, which read:

> The Court instructs the Jury that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact.

Murphy's only stated reason at the time was that the instruction was not necessary because the court's other instructions were sufficient. In both his pro se motion for a new trial and the motion for judgment notwithstanding the verdict (JNOV) filed by his counsel, Murphy did not raise any error with this instruction. But now he argues that the instruction conflicted with other instructions, impermissibly commented on the weight of the evidence, was an incomplete statement of the law, and was not supported by the other evidence.

¶25. We have held that a failure to raise an issue in a motion for a JNOV or a new trial procedurally bars appellate review on that issue. *See Boyda v. State*, 57 So. 3d 61, 67 (¶24) (Miss. Ct. App. 2011). Moreover, "[o]bjection on one ground at trial waives all other grounds for objection on appeal." *Bradford v. State*, 391 So. 3d 1254, 1268 (¶35) (Miss. Ct. App. 2024) (quoting *Young v. State*, 236 So. 3d 49, 57 (¶37) (Miss. 2017)). In *Bradford*, the

10

defendant objected to the admission of photographs of the victim's body on the grounds that they were cumulative. *Id*. On appeal, he argued that the photographs were gruesome or inflammatory. *Id*. We held that the defendant had waived this argument because it was not raised to the circuit court. *Id*. Similarly, in this case, Murphy did not object at trial to the jury instruction on the grounds he now raises, nor did he include the allegedly improper jury instruction in his motion for a new trial. Thus, his arguments are procedurally barred from consideration on appeal.

¶26. Notwithstanding the procedural bar, his arguments have no merit. Appellate courts have considered this particular jury instruction and found no error in its use, rejecting several of the arguments Murphy raises. Directly on point is *Pitts v. State*, 291 So. 3d 751 (Miss. 2020). In that case, Pitts was convicted of one count of touching a child, his stepson, for lustful purposes. *Id*. at 753 (¶1). At trial, Pitts objected to statements the child made to his mother about the abuse. *Id*. at 755 (¶18). After conducting a hearing, the court determined that the statements were admissible under the tender years exception to hearsay. *Id*. at 756 (¶22). At trial, Pitts objected to jury instruction S-6, which read: "The court instructs the jury that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact." *Id*. at 757 (¶30). His attorney stated that "the intent of S-6 is fairly covered elsewhere in all the instructions" and added that jury instruction S-6 "just bolsters the testimony." *Id*. at (¶31).

¶27. On appeal, Pitts argued other grounds for his objection, namely that the instruction was preemptory in nature, constituted an improper comment on the evidence, was

11

argumentative, and lessened the State's burden to prove guilt beyond a reasonable doubt. *Id*. at (¶32). The Mississippi Supreme Court stated, "This Court has held that 'an objection on one ground waives remaining grounds for purposes of appeal.'" *Id*. (quoting *Ambrose v. State*, 254 So. 3d 77, 118 (¶121) (Miss. 2018) (quoting *Evans v. State*, 725 So. 2d 613, 638 (Miss. 1997))). But because Pitts's counsel had added that the instruction "just bolsters the testimony," the Court addressed Pitts's other arguments. *Id*. The Court held that the instruction was an accurate statement of the law and cited several other cases where the Court had held that the unsupported word of a victim was sufficient to support a conviction if not discredited or contradicted by other evidence.[6] *Id*. at 758 (¶34). The Court further noted that the precise instruction that Pitts objected to had been approved by the Mississippi Court of Appeals in *Parks v. State*, 228 So. 3d 853, 871 (¶¶70-73) (Miss. Ct. App. 2017), *cert. denied*, 220 So. 3d 977 (Miss. 2017), and in *Willard v. State*, 219 So. 3d 569, 576-77 (¶¶30-33) (Miss. Ct. App. 2017), stating:

> In *Parks*, the Court of Appeals held that instruction S-6 was not a comment on the evidence, and it did not 'tell the jury how to weigh the credibility of [the victim's] testimony.' The *Parks* court also noted that other instructions informed the jurors that they must find that the defendant was guilty beyond a reasonable doubt.

*Pitts*, 291 So. 3d at 758 (¶35) (citations and internal quotation marks omitted). The *Pitts*

---

[6] These cases included *Massey v. State*, 992 So. 2d 1161, 1164 (¶14) (Miss. 2008) (quoting *Miley v. State*, 935 So. 2d 998, 1001 (¶10) (Miss. 2006)), where the Supreme Court held that "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." This Court recently approved a similar jury instruction in *Adame v. State*, 401 So. 3d 204, 207 (¶18) (Miss. Ct. App. 2025).

Court agreed that the instruction before it did not constitute an improper comment on the weight of the evidence. *Id*. at (¶36). The Court noted that the trial court's instruction informed the jury that they were not to single out one instruction but consider all instructions as a whole. *Id*. at (¶37). Moreover, the jury was clearly instructed on the elements of the crime and that the State had to prove those elements beyond a reasonable doubt. *Id.* at (¶38). The Supreme Court concluded that the trial court did not abuse its discretion in giving the jury instruction. *Id*. at 759 (¶39).

¶28. This Court cited *Pitts* in *Bliss v. State*, 326 So. 3d 1000, 1001 (¶3) (Miss. Ct. App. 2021), where Bliss was convicted of sexual battery for assaulting a woman in the parking lot of her apartment complex and, on appeal, objected to the same jury instruction that Murphy challenges in this case. In *Bliss*, the victim, who returned home in the early morning hours after attending a bachelorette party, was the only witness to the actual assault. *Id*. at 1001-02 (¶¶3-4). On appeal of his conviction, Bliss contended that the circuit court erred in giving jury instruction S-6, which read: "The Court instructs the jury that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact." *Id*. at 1004-05 (¶17). We noted the standard of review, i.e., whether the court abused its discretion in giving the jury instruction, and explained that no reversible error would be found if the instructions fairly announced the law of the case and created no injustice. *Id*. at 1005 (¶18). After reviewing the holding in *Pitts*, we found Bliss's argument lacked merit. *Id*. at (¶21).

¶29. We approved the same instruction in *Morris v. State*, 319 So. 3d 504, 505 (¶2) (Miss.

13

Ct. App. 2021), where Morris took his girlfriend's twelve-year-old daughter into a bedroom, undressed himself and the child, touched her breasts and vagina, and asked her to touch his private part. On appeal of his conviction of two counts of touching a child for lustful purposes, Morris challenged a jury instruction that read: "The court instructs the Jury that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact." *Id*. at 506 (¶8). We rejected Morris's argument that the instruction was not an accurate statement of the law because *Pitts* held that the very same instruction was an accurate statement of the law. *Id*. at 507 (¶10). We have also cited *Pitts* more recently in *Adame v. State*, 401 So. 3d 204 (Miss. Ct. App. 2025), where we examined a slightly different, but similar, instruction. We noted that in *Pitts* the Supreme Court had rejected the defendant's argument that such an instruction was an improper comment on the evidence. *Id*. at 208 (¶26). Rather, the Supreme Court found that the instruction was an accurate statement of the law and that it did not tell the jury how to weigh the victim's testimony. *Id*. at (¶29).

¶30.    In all these cases, *Pitts*, *Bliss*, and *Morris*, the Mississippi Supreme Court and this Court examined and approved the very same jury instruction that was given in this case, which Murphy himself acknowledges. Murphy cites no authority where the jury instruction given in his case has been rejected by an appellate court. Instead, Murphy argues that the substance of the jury instruction given here was based on the "appellate courts' reasoning used in addressing the sufficiency of the evidence on appeal," citing *Power v. State*, 66 So. 3d 155 (Miss. Ct. App. 2010), which the State had cited to the trial court in addition to *Parks*

to support the instruction. However, *Power* did not involve the analysis of a jury instruction; rather, this Court dealt with the issue of whether the uncorroborated testimony of a sex-crime victim could support the denial of a directed verdict, which is a different analysis altogether. *See Goldsmith v. State*, 195 So. 3d 207, 212 (¶16) (Miss. Ct. App. 2016) (When a directed verdict challenges "the sufficiency of the evidence presented to the jury," this "Court will consider the evidence in the light most favorable to the State, giving the State the benefit of all favorable inferences that may reasonably be drawn from the evidence.") (internal quotation marks omitted). Murphy mistakenly confuses an analysis of the *issue* of whether the evidence was sufficient to support a conviction, which is reviewed in a light most favorable to the State, with an analysis of whether a court abused its discretion in giving a particular jury instruction, as in *Parks*, 228 So. 3d at 871 (¶¶70-71). There, we noted the standard of review, i.e., that there is no error if the instructions as a whole fairly announce the law and create no injustice, *id*. at (¶70), and we proceeded to decide that the instruction did not comment on the weight of the evidence or tell the jury how to weigh it. *Id*. at (¶71). We made no mention of considering a jury instruction in the light most favorable to the prosecution or the verdict.

¶31. Further, we reject Murphy's argument that the instruction had borrowed "isolated reasoning . . . from appellate decisions" and "translated it from mere discussion into substantive law." The *Pitts*, *Bliss*, and *Morris* opinions each considered the same arguments Murphy raised, i.e., that the instruction impermissibly commented on the weight and sufficiency of the evidence and rejected them, *holding* that the trial court did not abuse its

15

discretion in giving the instruction. *Pitts*, 291 So. 3d at 759 (¶40). The language by this Court and the Mississippi Supreme Court about the jury instruction, which is the same as the one given in this case, was not mere dicta but statements of precedential substantive law. In this case, *Pitts*, *Bliss*, and *Morris* dispose of Murphy's arguments. Here, the jury was instructed on the elements of the offense charged, the State's burden of proof, and told not to single out any instruction individually, but to consider the instructions as a whole.

¶32. Finally, Murphy argues that the instruction given, that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact, was improper because in his case the victims' testimony was corroborated. Here, two minors were involved, aged three and six at the time of the crimes. Each testified about their interactions with Murphy and what they saw him do to the other. Had the jury chosen to disregard Kate's testimony, then Maddie's testimony would have been uncorroborated, or vice versa. Moreover, many child abuse cases involve a single victim who is alone with the perpetrator and the only witness to the actual abuse, e.g., a child molested by his stepfather for years with no other witnesses. *Pitts*, 291 So. 3d at 753 (¶¶4-6). Again, Murphy provides no legal authority with facts similar to those in this case to support his argument that the instruction was improper. "When a party fails to cite authority to support an argument on appeal, the issue is procedurally barred." *Quilantan v. State*, 418 So. 3d 560, 567 (¶18) (Miss. Ct. App. 2025) (citing *Hale v. State*, 191 So. 3d 719, 728 (¶24) (Miss. 2016)). Here, not only is Murphy's argument procedurally barred, it has no merit.

¶33. In summary, we find no merit to any of Murphy's arguments and conclude that the

circuit court did not abuse its discretion in giving the jury instruction at issue.

**Conclusion**

¶34. Murphy is procedurally barred from arguing the jury instruction issue on appeal because he did not object to it at trial and failed to raise it in his motion for JNOV or for a new trial. Notwithstanding the procedural bar, we find that the circuit court did not abuse its discretion in giving the instruction at issue.

¶35. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**